(134 P.3d 1)
No. 93,454

STATE OF KANSAS, *Appellee*, v. JASON CHESBRO, *Appellant*.

Opinion filed May 12, 2006.

*Julie McKenna*, of McKenna Law Office, of Salina, for appellant.

*Jon P. Whitton*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before RULON, C.J., MARQUARDT and HILL, JJ.

RULON, C.J.: Defendant Jason Chesbro appeals the district court's summary denial of his motion to withdraw a guilty plea.

• The defendant raises the following issues on appeal:

• The district court violated the defendant's due process rights when failing to inform the defendant of the applicable maximum penalties before accepting defendant's guilty plea.

• The State breached the plea agreement at sentencing.

• The district court abused its discretion when dismissing the defendant's motion to withdraw guilty plea without affording the defendant a hearing.

• The district court failed to make adequate finding when adopting an out-of-state conviction for establishing the defendant as a persistent sex offender.

• The district court erred in finding that downward departures are unavailable with application of the persistent sex offender act.

We affirm.

## Facts

On January 15, 2004, in connection with alleged sexual conduct with S.M.H., a minor, the State charged the defendant with two counts of aggravated indecent liberties with a child, in violation of K.S.A. 21-3504(a)(3)(A); and aggravated indecent solicitation of a child, in violation of K.S.A. 21-3511(a). Later, the State amended the complaint to charge an additional count of rape, in violation of K.S.A. 2005 Supp. 21-3502(a)(2).

The defendant originally requested a jury trial, but later decided to accept a plea agreement. The agreement provided the State would dismiss every count of the complaint, except one count of aggravated indecent liberties with a child to which the defendant would enter a guilty plea. The State would further join the defendant in recommending a downward durational departure sentence of 50 months.

Recognizing the possibility the defendant's criminal history would trigger the persistent sex offender provisions, defense counsel requested a continuance of the plea hearing to explain the provisions to the defendant. Defense counsel articulated a desire to renegotiate the plea agreement to take into consideration the defendant's potential status as a persistent sex offender. The district court granted the defendant's requested continuance.

The following day, the parties again appeared in district court to present the defendant's plea. The defendant accepted the plea agreement without any amendment to provide for the potential application of the persistent sex offender statutes. In addition to asking the defendant questions designed to determine the voluntariness of his plea, the district court noted the offense to which the defendant was entering a guilty plea provided for a sentence of up to 247 months in prison with a 60-month postrelease period.

The following colloquy occurred:

"THE COURT: Do you understand that the agreement with regard to the departure sentence and the post release period are recommendations to the Court, but it is the Court's responsibility to impose the proper sentence?

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you understand that if after receiving the presentence report and reviewing the factors of the case the Court would for some reason not accept those recommendations and would impose some other sentence or disposition, that would not be a basis upon which you could withdraw your plea and ask for a trial?

"THE DEFENDANT: Yes, sir."

When the defendant indicated he wished to enter a guilty plea after being informed of his rights and the potential consequences, the district court accepted the plea and entered a conviction for aggravated indecent liberties with a child.

At sentencing, the district court held the persistent sex offender provisions of K.S.A. 2005 Supp. 21-4704(j) were applicable, due to the defendant's criminal history. As a result, the district court rejected the downward departure sentencing recommendation presented in the plea agreement and ordered the defendant to serve 110 months in the custody of the Department of Corrections.

Eventually, the defendant filed a motion to withdraw his guilty plea. After considering the defendant's arguments, the district court denied the motion, reasoning the defendant was properly advised that the court was not bound to follow the plea agreement in sentencing.

## Maximum Penalties

After sentencing, a district court may permit a defendant to withdraw a plea, if doing so will correct a manifest injustice. K.S.A. 2005 Supp. 22-3210(d). A decision regarding a motion to withdraw a plea lies with the discretion of the district court. An appellate court will not disturb such decision absent a demonstration of an abuse of discretion by the district court. See *State v. Muriithi*, 273 Kan. 952, 955, 46 P.3d 1145 (2002). Judicial discretion is abused if judicial action is arbitrary, fanciful, or unreasonable so that no reasonable person would take the view adopted by the court. See *State v. Murray*, 22 Kan. App. 2d 340, 346, 916 P.2d 712 (1996).

As a preliminary matter, the State challenges this court's jurisdiction to consider the defendant's claims because he was assigned the presumptive sentence for a conviction for aggravated indecent liberties with a child, given his criminal history. While this court ordinarily has no jurisdiction to consider an appeal of a presumptive sentence, see *State v. Flores*, 268 Kan. 657, 658, 999 P.2d 919 (2000) (citing K.S.A. 21-4721[c]), the State's argument misstates the purpose of the defendant's appeal. The defendant is not appealing his sentence but the denial of his motion to withdraw his guilty plea.

Primarily, the defendant contends his plea was accepted by the court in violation of the due process standards set forth in *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969), which have been codified within K.S.A. 2005 Supp. 22-3210(a). See *Muriithi*, 273 Kan. at 964. In particular, the defendant claims the district court did not adequately inform him of the potential maximum sentence before accepting the defendant's plea because the district court did not warn the defendant of the possible application of the persistent sex offender provisions of the Kansas Sentencing Guidelines, K.S.A. 2005 Supp. 21-4704(j).

In pertinent part, K.S.A. 2005 Supp. 22-3210(a) provides:

"Before or during trial a plea of guilty or *nolo contendere* may be accepted when:

. . . .

"(2) in felony cases the court has informed the defendant of the consequences of the plea, including the specific sentencing guidelines level of any crime committed on or after July 1, 1993, and of the maximum penalty provided by law which may be imposed upon acceptance of such plea."

The function of the requirements of K.S.A. 2005 Supp. 22-3210(a) is to provide a basis from which the district court may establish that a defendant's plea is entered with knowledge of the consequences of his or her action. See *Trotter v. State*, 218 Kan. 266, 268-69, 543 P.2d 1023 (1975). However, a district court is not required to inform the defendant of every potential consequence related to a plea, but only the direct penal consequences. See *Muriithi*, 273 Kan. at 964-65; *Bussell v. State*, 25 Kan. App. 2d 424, 426-27, 963 P.2d 1250, *rev. denied* 266 Kan. 1107 (1998). A direct

penal consequence, as distinguished from a collateral consequence, is "definite, immediate, and almost automatic as a result of [the] guilty plea." *Bussell*, 25 Kan. App. 2d at 427.

In *Bussell*, this court ruled that the application of provisions of the Kansas Sexually Violent Predators Act (KSVPA) was not a direct penal consequence of a guilty or nolo contendere plea. We concluded that involuntary commitment of certain sex offenders under the KSVPA was civil in nature, not penological. We noted that involuntary commitment is not an automatic consequence of entering a plea to a sexually violent crime, as application of the KSVPA is solely within the discretion of the office of the attorney general. Finally, we noted that application of the KSVPA was not a consequence of entering a plea because the KSVPA authorized civil commitment of any person charged with a sexually violent offense and a conviction is not required.

Additionally, our Supreme Court has concluded the principles of due process are not offended when a juvenile enters a plea without being informed of the possibility that his conviction might affect his future status as a juvenile offender. In *In re J.C.*, 260 Kan. 851, 925 P.2d 415 (1996), the court ruled:

"Due process does not require a judge to inform a juvenile that a stipulation to a felony offense may be used subsequently to determine his or her later status as a juvenile offender. Stated another way, one of the collateral consequences of which a defendant need not be informed at a plea hearing is the possibility that the plea may be used to enhance the sentence for a later crime. Such a consequence is not definite, immediate, or automatic but rather only speculative." 260 Kan. at 858.

This case is quite inapposite to either *Bussell* or *In re J.C.* Here, the sentencing court found that K.S.A. 2005 Supp. 21-4704(j) mandated the doubling of the defendant's presumptive sentence if the defendant qualified as a persistent sex offender. Without question, if the persistent sex offender provisions are applicable to the peculiar circumstances of a case, the maximum penalty associated with a criminal defendant's plea increases dramatically. See K.S.A. 2005 Supp. 21-4704(j)(1).

The application of the persistent sex offender provisions is speculative at the time the district court receives a plea to the extent

that the criminal history of a defendant is often unknown. There-fore, a district court cannot immediately ascertain the applicability of the persistent sex offender provisions. See K.S.A. 2005 Supp. 21-4704(j)(2). In *State v. Dighera*, 22 Kan. App. 2d 359, 364-65, 916 P.2d 68, *rev. denied* 260 Kan. 997 (1996), this court noted the strong public policy against requiring a district court to inform a criminal defendant of the applicability of probation to his sentence when the presumptive sentence is defined by the defendant's crim-inal history score, which had not yet been ascertained.

"[W]e believe there are sound policy reasons for not requiring the trial court, when receiving a defendant's plea, to advise the defendant of the presumption of probation or incarceration. At arraignment, or any other stage of the proceeding when a plea may be offered, the court will have little information concerning the case other than the crimes charged and their severity level. The court will, in all likelihood, not know the defendant's criminal history." 22 Kan. App. 2d at 364.

However, a panel of this court contemporary to *Dighera* con-cluded that a plea was not knowing and voluntary when the de-fendant was unaware that a prior juvenile adjudication would be included in the calculation of his criminal history, even though the defendant was informed of the applicable sentencing range for the offense to which he entered a guilty plea. See *Murray*, 22 Kan. App. 2d at 348.

"Where a court has wide discretion in sentencing, both the prosecution and defendant submit to that discretion when entering a plea agreement. In such circumstances, a guilty plea is not involuntary if the defendant is told of the range of the court's discretion before entering the plea. See, *e.g.,* [*State v.*] *Solomon*, 257 Kan. [212, 217, 891 P.2d 407 (1995)]. Where the law and the facts specifically dictate or allow a sentencing enhancement, however, the prosecution and the court must share knowledge of such a situation with the defendant in order for the guilty plea to be voluntary. [Citations omitted.] In order to allow a criminal defense attorney to fulfill his or her obligations to a defendant concerning the consequences of pleading guilty, the defense attorney must have, and thus the prosecutor must share with the defense attorney, knowledge of any expunged juvenile adjudications that will be used in the defendant's criminal history." *Murray*, 22 Kan. App. 2d at 348.

In any event, the potential consequence of failing to inform a criminal defendant of the persistent sex offender provision is clearly more severe than the potential consequence at issue in *Mur-*

*ray* or *Dighera*. Here, the district court informed the defendant that the maximum penalty was 247 months in prison. Without knowing the defendant's criminal history score, however, the district court had no means of knowing that application of the persistent sex offender provisions would not create a maximum penalty of 494 months in prison. See K.S.A. 2005 Supp. 21-4704(a); K.S.A. 21-3504(c) (aggravated indecent liberties with a child, as charged in this case, is a severity level 3 person felony).

Due process does not mandate that a criminal defendant receive the sentence expected or desired. See, *e.g.*, *Wadsworth v. State*, 25 Kan. App. 2d 484, 967 P.2d 337, *rev. denied* 266 Kan. 1116 (1998) (holding that a district court is not constitutionally required to inform a criminal defendant that sentences for multiple convictions may be run consecutively before the defendant enters a plea). However, the district court is required to inform the defendant of the potential maximum penalty for each conviction. K.S.A. 2005 Supp. 22-3210(a)(2). Here, the defendant faced sentencing on only one conviction, but the district court clearly did not inform the defendant of the maximum penalty prescribed by statute for that offense to the extent that the defendant qualified as a persistent sex offender.

A district court's failure to comply strictly with the provisions of K.S.A. 2005 Supp. 22-3210(a), however, does not necessarily mandate reversal. See *Trotter*, 218 Kan. at 268-69.

"While we do not approve of any failure to comply strictly with the explicitly stated requirements of K.S.A. 22-3210, it does not follow that every deviation therefrom requires reversal. If upon review of the entire record it can be determined that the pleas of guilty were knowingly and voluntarily made, the error resulting from failure to comply strictly with K.S.A. 22-3210 is harmless." *Trotter*, 218 Kan. at 269.

In *State v. Shaw*, 259 Kan. 3, 910 P.2d 809 (1996), our Supreme Court considered if a defendant demonstrated manifest injustice supporting the withdrawal of a plea when the district court improperly informed the defendant of the applicable severity level for the crime. Shaw was informed the offense charged was a severity level 4 offense when it actually was a severity level 3 offense. Although the district court sentenced the defendant to 41 months

in prison, which was consistent with the sentencing range of a severity level 4 offense, the sentence was illegal because the minimum presumptive sentence for a severity level 4 offense was 46 months. 259 Kan. at 11. Without making specific findings to justify a downward durational departure, therefore, the district court had imposed an illegal sentence, which the Kansas Supreme Court ruled must be corrected. After correcting the illegal sentence, however, the defendant received a sentence which was a higher severity level than the sentence the defendant was informed he would be receiving prior to entering his plea. 259 Kan. at 12-14.

The present case is distinguishable from *Shaw* because this defendant was properly informed of the severity level of the charged offense to which he was entering a plea. Although the defendant was not informed by the district court of the maximum penalty applicable through the persistent sex offender provisions, the sentence imposed upon the defendant (110 months) fell within the sentencing range described by the district court at sentencing (up to 247 months). Because this defendant received no more than 247 months, the failure to inform the defendant of the applicability of the persistent sex offender provisions cannot have unfairly influenced the defendant to enter a plea. We conclude the defendant cannot demonstrate manifest injustice warranting the withdrawal of his plea.

In *Thomas v. United States*, 27 F.3d 321, 324 (8th Cir. 1994), a federal circuit court considered a similar question. There, the district court had notified Thomas, prior to receiving his plea, that Thomas could potentially serve a maximum sentence of 60 years. The district court did not inform Thomas that, by entering a plea, the career offender provisions of the federal sentencing guidelines act might be applicable, which enhanced the regularly applicable presumptive sentences. After entering a plea, a criminal history investigation was performed, and the career offender provisions were deemed applicable. Ultimately, Thomas was sentenced to concurrent terms of 262 months and 210 months. In his appeal, among other contentions, Thomas claimed that his plea was not knowing and voluntary because the district court had not informed him of the potential application of the career offender provisions.

The Eighth Circuit Court of Appeals rejected the argument, reasoning that the sentence imposed upon the defendant fell within the sentencing range the district court stated prior to accepting the defendant's plea. 27 F.3d at 325.

Although the Eighth Circuit Court of Appeals held that Thomas was not entitled to notification of the applicability of the career offender provisions, its reasoning regarding the voluntariness of the plea is persuasive. As in *Thomas,* this defendant cannot demonstrate that he entered a plea without knowledge that he might be sentenced to 110 months, even though the district court erroneously informed him that the maximum sentence prescribed by the guidelines was 247 months rather than 494 months.

More importantly, under the facts of this case, the defendant cannot legitimately contend his plea was the product of ignorance with respect to the persistent sex offender provisions of K.S.A. 2005 Supp. 21-4704(j). On the date originally scheduled to receive the defendant's plea, defense counsel moved for a continuance based upon counsel's realization the persistent sex offender sentencing provisions might be applicable in the defendant's case. The district court granted the requested continuance. Later, the defendant, arguably with an understanding of the potential applicability of the persistent sex offender provisions, entered a guilty plea.

Under the circumstances, the district court's failure to advise the defendant of the potential sentencing consequences occasioned by K.S.A. 2005 Supp. 21-4704(j) did not render the defendant's plea unknowing or involuntary. As our Supreme Court stated in *Trotter*:

"Upon consideration of the entire record we conclude it demonstrates satisfaction of the requirement of an affirmative showing that the [plea was] knowing and voluntary. It is obvious the district court could have more fully complied with K.S.A. 22-3210, and our decision on this appeal does not condone that court's action. Full compliance with the statute not only protects the accused's due process guarantees, but also leaves a record adequate for any review and forestalls collateral proceedings such as the instant case. Nonetheless, under the facts and circumstances of this case, the district court's error was harmless." 218 Kan. at 270.

Under the circumstances presented in this case, the district court's failure to inform the defendant of the potentially doubled

sentence under K.S.A. 2005 Supp. 21-4704(j) did not affect the defendant's due process right to a knowing and voluntary waiver of his constitutional rights in entering a guilty plea. Consequently, the defendant fails to establish an abuse of the district court's discretion in refusing to allow him to withdraw his plea on this point.

## Breach of Plea Agreement

The defendant seeks to withdraw his plea contending the State failed to abide by the plea agreement. A criminal defendant's due process rights are impinged when the State breaches a plea agreement, and this court exercises unlimited review of such claims. See *McGoldrick v. State*, 33 Kan. App. 2d 466, 472, 104 P.3d 416, *rev. denied* 279 Kan. 1007 (2005).

The plea agreement contained in this record provides:

"I will enter a plea *of guilty* to one (1) count of Aggravated Indecent Liberties with a Child, a level three (3) person felony. The State has agreed to dismiss the Rape, Aggravated Indecent Liberties with a Child and Aggravated Indecent Solicitation charges in the above captioned matter. The State will agree to a durational departure that will result in a sentence of fifty (50) months' imprisonment. The State will also agree to a post release supervision period of thirty-six (36) months.

"I fully understand that the Court is not bound by any recommendations as to what sentence should be imposed or as to any judgment of the Court." (Italics indicates handwritten addition.)

On appeal, the defendant contends the State failed to abide by the sentencing recommendation by producing the testimony of the victim's mother at sentencing and by submitting a letter to the district court from a shelter manager of one of the facilities operated by the Domestic Violence Association of Central Kansas (DVACK). The defendant further contends the State failed to present any evidence or an argument in support of the defendant's motion for a departure sentence.

K.S.A. 22-3424(e) provides:

"Before imposing sentence the court *shall*: (1) Allow the prosecuting attorney to address the court, if the prosecuting attorney so requests; (2) afford counsel an opportunity to speak on behalf of the defendant; (3) allow the victim or such members of the victim's family as the court deems appropriate to address the court, if the victim or the victim's family so requests; and (4) address the defendant

personally and ask the defendant if the defendant wishes to make a statement on the defendant's own behalf and to present any evidence in mitigation of punishment."

Although the district court seemingly has some discretion in permitting a victim or a member of the victim's family to testify at sentencing, the use of the word "shall" within the statute indicates that consideration of the applicability of such testimony is mandatory. As such, the prosecutor cannot control through plea agreement the right created by statute for the victim or the victim's family to be heard at sentencing.

Similarly, there is no evidence within the record that the State solicited the comments of the DVACK shelter manager in the letter sent to the district court. The prosecution did not affirm the statements of either party in any manner during sentencing. The prosecution did not advocate for a position different from that represented in the plea agreement. The prosecutor remained mute at sentencing.

It is this silence throughout the sentencing proceedings which is the cause of grave concern on this issue. Where a plea agreement rests upon the promise of the prosecutor to the extent that the promise may reasonably provide an inducement or consideration for the defendant's waiver of his or her constitutional trial rights, due process is involved and both state and federal courts have exacted meticulous standards in the creation and execution of plea agreement promises. See *State v. Johnson*, 258 Kan. 100, 104-05, 899 P.2d 484 (1995) (citing *Santobello v. New York*, 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 [1971]).

If the State had promised within its plea agreement to stand silent at sentencing, freeing the defendant to argue for a downward departure without opposition, the record in this case would have demonstrated an admirably performed plea agreement. Instead, the State promised to recommend a downward durational departure sentence of 50 months. Even though the State did not object to the defendant's statement of the agreement reached in exchange for the defendant's plea, the State signed no pleading, including the tendered plea agreement, and affirmatively offered no statement at sentencing indicating a recommendation of any sentence.

Research of Kansas cases, as well as the case law in other jurisdictions, has revealed no ruling on facts analogous to the present case. However, in *United States v. Benchimol*, 471 U.S. 453, 455-56, 85 L. Ed. 2d 462, 105 S. Ct. 2103 (1985), the United States Supreme Court considered whether the Government was required to explain its reasons for joining a defense motion for a lenient sentence in order to fulfill its plea agreement obligation. The Court concluded that, by the terms of the agreement, the Government was required to recommend probation with restitution, but due process did not require the Government to do more than acknowledge its concurrence with the defense request. The Court reasoned:

"It may well be that the Government in a particular case might commit itself to 'enthusiastically' make a particular recommendation to the court, and it may be that the Government in a particular case might agree to explain to the court the reasons for the Government's making a particular recommendation. But the respondent does not contend, nor did the Court of Appeals find, that the Government had in fact undertaken to do either of these things here. The Court of Appeals simply held that as a matter of law such an undertaking was to be implied from the Government's agreement to recommend a particular sentence. But our view of Rule 11(e) is that it speaks of what the parties in fact agree to, and does not suggest that such implied-in-law terms as were read into this agreement by the Court of Appeals have any place under the Rule.

". . . When the Government agrees pursuant to Rule 11(e) to make a recommendation with respect to sentence, *it must carry out its part of the bargain by making the promised recommendation*; but even if Rule 11(e) allows bargaining about degrees of enthusiasm, there appears to have been none here." (Emphasis added.) 471 U.S. at 455-56.

While nothing within the record here indicates that the State actively opposed the requested sentencing departure, nothing supports a finding that the State affirmatively recommended such a departure at sentencing either. When the State promises, as part of a plea agreement, to recommend a particular sentence, due process demands action in conformity to the agreement. In this case, the State would have been well-advised to advise the district court of its sentencing recommendation in conformity with the plea agreement on the record.

Nevertheless, the State's failure to state the sentence recommendation at the sentencing hearing, in this case, does not constitute reversible error. The defendant presented the sentencing recommendation to the court as part of the plea agreement with the State. As a result, the district court was aware that the sentence proposed by the defendant was also recommended by the State pursuant to the agreement.

Due process does not require the State to argue "enthusiastically" in favor of a sentencing recommendation, absent a specific agreement to do so. See *Benchimol*, 471 U.S. at 455-56. Under Kansas law, a sentencing court is not bound by the recommendations of a plea agreement. See *State v. Boley*, 279 Kan. 989, 993, 113 P.3d 248 (2005). It is clear the district court found no factual basis for a downward departure in this case. Consequently, where the sentencing court was aware that the State joined in the sentencing recommendation, as here, the State's failure to make an affirmative statement at the sentencing hearing has not prejudiced the defendant's due process rights and is, though error, constitutionally harmless. See *State v. Hebert*, 277 Kan. 61, 96, 82 P.3d 470 (2004) (setting out constitutionally harmless error standard).

### Failure to Provide Hearing

In the next issue, the defendant contends the district court erred in ruling on his motion to withdraw his plea without a full hearing.

"The K.S.A. 60-1507 procedure governing hearings should apply to motions to withdraw [a] guilty plea filed after imposition of sentence. Requiring a hearing in every case in which a defendant seeks to withdraw [a] plea of guilty or nolo contendere would create an extreme burden on the courts, and such a rule is not feasible or justified. A hearing on a motion to withdraw a plea of guilty or nolo contendere is limited to those instances in which the defendant's motion raises substantial issues of fact or law and should be denied when the files and records conclusively show that the defendant is entitled to no relief." *State v. Jackson*, 255 Kan. 455, 459, 874 P.2d 1138 (1994).

The district court was presented with a written motion to withdraw the defendant's plea. The court clearly relied upon the record to rule that each of the bases used by the defendant to support his plea possessed no merit. However, because each of the claims

made in the motion raise solely questions of law pursued as separate claims within this appeal, the defendant cannot demonstrate an independent claim of error in the district court's failure to hold a hearing.

## Inadequate Findings

The defendant further challenges the application of the "persistent sex offender" provisions in his case by arguing the district court's finding his prior Nebraska conviction qualified as a sexually motivated crime was erroneous.

K.S.A. 2005 Supp. 21-4704(j) provides, in pertinent part:

"(2) Except as otherwise provided in this subsection, as used in this subsection, 'persistent sex offender' means a person who: (A)(i) Has been convicted in this state of a sexually violent crime, as defined in K.S.A. 22-3717 and amendments thereto; and (ii) at the time of the conviction under paragraph (A)(i) has at least one conviction for a sexually violent crime, as defined in K.S.A. 22-3717 and amendments thereto in this state or comparable felony under the laws of another state, the federal government or a foreign government."

The crimes included within the definition of "sexually violent crime" provided in K.S.A. 2005 Supp. 22-3717(d)(2) are rape, indecent liberties with a child, aggravated indecent liberties with a child, criminal sodomy (certain subsections), aggravated criminal sodomy, indecent solicitation of a child, aggravated indecent solicitation of a child, sexual exploitation of a child, aggravated sexual battery, any attempt, conspiracy, or criminal solicitation of any of the preceding acts, and any act which at the time of sentencing is determined beyond a reasonable doubt to have been "sexually motivated," defined as "one of the purposes for which the defendant committed the crime was for the purpose of the defendant's sexual gratification." K.S.A. 2005 Supp. 22-3717(d)(2)(L).

Interpretation of a statute is a question of law over which this court has unlimited review. See *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003). As the offense for which the defendant currently stands convicted is aggravated indecent liberties with a child, the first part of the persistent sex offender designation is satisfied. On appeal, the defendant does not challenge the district court's

determination that his conviction qualifies as a "sexually violent crime" within the meaning of the persistent sex offender provision.

Similarly, the defendant does not challenge the accuracy of his criminal history with respect to the Nebraska conviction for attempted first-degree sexual assault. Therefore, whether the Nebraska conviction qualifies as a prior "sexually violent crime" within the meaning of the persistent sex offender provision is a question of law over which this court possesses unlimited review. See *Hale v. Hale*, 33 Kan. App. 2d 769, 770, 108 P.3d 1012 (2005) ("Resolution of this issue involves the interpretation of Kansas and Oklahoma statutes, matters over which our review is unlimited.").

At the time of the defendant's conviction in Nebraska for the attempted offense, sexual assault in the first degree was defined in the following manner:

"(1) Any person who subjects another person to sexual penetration (a) without consent of the victim, or (b) who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct, or (c) when the actor is nineteen years of age or older and the victim is less than sixteen years of age is guilty of sexual assault in the first degree." Neb. Rev. Stat. § 28-319(1) (1995).

Conduct proscribed by the Nebraska statute above closely resembles the conduct proscribed in K.S.A. 21-3502 (rape). In conducting the presentencing investigation report, however, the State classified the prior Nebraska conviction as most closely analogous to K.S.A. 21-3510(a)(1) (indecent solicitation of a child).

While this defendant correctly argues he had no opportunity to argue the pertinent facts of the underlying crime, there are no conceivable facts constituting attempted sexual assault in the first degree under the Nebraska statute, which would not also constitute the commission of an attempted sexually violent offense as defined by K.S.A. 2005 Supp. 22-3717(d)(2). Consequently, any error committed by the district court in refusing to allow evidence to be presented regarding the nature of the defendant's prior crime was harmless with respect to the application of the persistent sex offender sentencing provision. See *State v. Kendall*, 274 Kan. 1003, 1010, 58 P.3d 660 (2002).

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." K.S.A. 60-261.

As any hearing on the defendant's prior conviction for sexual assault in the first degree would inevitably lead to the conclusion the persistent sex offender provisions of K.S.A. 2005 Supp. 21-4704(j) were applicable, the defendant cannot establish that the district court's action in this case was inconsistent with substantial justice.

## Departures

As a final issue on this appeal, the defendant contends the district court erroneously held the sentencing court possessed no discretion to consider a downward durational departure due to the mandatory language in K.S.A. 2005 Supp. 21-4704(j). Statutory interpretation involves a question of law over which this court possesses unlimited review. See *Maass*, 275 Kan. at 330.

At sentencing, this defendant urged the sentencing court to adopt the motion for departure, but the judge demonstrated reluctance, stating: "Well, I have a couple of questions. First of all, with regard to the persistent sexual offender statute I find nothing in that statute which permits or allows a disposition or durational departure." This defendant contended at sentencing that although the persistent sex offender provisions, if applicable, required the district court to double the maximum applicable grid sentence, nothing within K.S.A. 2005 Supp. 21-4704 prohibited the application of the departure provisions in K.S.A. 2005 Supp. 21-4716. We agree with the defendant's contention.

When the sentencing court here persisted in the belief that the provisions of K.S.A. 2005 Supp. 21-4704(j) were not subject to departure, the defendant suggested it would be inappropriate for the State to enter into an agreement to recommend a downward durational departure sentence when the State knew the persistent

sex offender provision would be applicable and when a departure sentence is unavailable as a matter of law. This sentencing court then departed from its previous position, saying: "Well, of course, the—whether the agreement is accepted is in the sound discretion of the court in sentencing. And the mere agreement of the defendant and the State doesn't waive the law and doesn't waive the—particularly the requirement that there be substantial and compelling reasons for a durational or dispositional departure."

K.S.A. 2005 Supp. 21-4704(d) provides:

"The sentencing guidelines grid for non-drug crimes *as provided in this section* defines presumptive punishments for felony convictions, *subject to judicial discretion* to deviate for substantial and compelling reasons and impose a different sentence in recognition of aggravating and mitigating factors *as provided in this act.* The appropriate punishment for a felony conviction should depend on the severity of the crime of conviction when compared to all other crimes and the offender's criminal history." (Emphasis added.)

When interpreting a statute, courts generally employ a presumption that the legislature expressed its intent through the plain language employed within the statute. See *Pieren-Abbott v. Kansas Dept. of Revenue,* 279 Kan. 83, 88, 106 P.3d 492 (2005). By employing the terms "this section" and "this act," the legislature intended to differentiate the purpose of K.S.A. 2005 Supp. 21-4704 from other provisions of the Kansas Sentencing Guidelines Act. As clearly stated within this subsection, K.S.A. 2005 Supp. 21-4704 is designed to establish a presumptive sentence. A sentencing court may depart from such a presumptive sentence, however, based upon the provisions of other sections within the Act.

K.S.A. 2005 Supp. 21-4704(j) contains the persistent sex offender sentencing provisions, yet it is contained within the section establishing presumptive sentences. Construing the provisions of K.S.A. 2005 Supp. 21-4704 as a harmonious, consistent, and sensible whole, therefore, leads to the conclusion that subsection (j) merely establishes the presumptive sentence for offenses committed by persons classified as persistent sex offenders. See *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas,* 275 Kan. 763, Syl. ¶ 2, 69 P.3d 1087 (2003) (applying canon of statutory construction, in pari materia). As such, the defendant correctly asserts that

the provisions of K.S.A. 2005 Supp. 21-4716(c) may be applied to depart from the statutorily mandated sentence imposed upon one qualifying as a persistent sex offender.

This conclusion is further supported by the use of mandatory language (*e.g.,* "shall") in establishing other presumptive sentences under the sentencing grid. See, *e.g.,* K.S.A. 2005 Supp. 21-4704(f), (g), (h), (i), (j), (k), (l). Despite the mandatory language of these provisions, subsection (d) explicitly permits the district court to depart from the presumptive sentence upon a finding of substantial and compelling reasons under K.S.A. 2005 Supp. 21-4716(c). There is no compelling reason to treat the presumptive sentence outlined by subsection (j) differently. If substantial and compelling reasons are presented, a district court may depart from the presumptive sentence imposed under the persistent sex offender provisions.

Here, this sentencing court apparently refused the defendant's motion for a downward durational departure on two bases. First, the district court seemingly believed that the persistent sex offender provisions permitted no departure sentence. This was error. After the defendant called attention to this error numerous times during sentencing, the sentencing court alternatively noted the record provided no basis to support a departure sentence. As such, we need not reverse the imposed sentence.

Affirmed.