NOT DESIGNATED FOR PUBLICATION

Nos. 116,956
116,957

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

THOMAS D. SHUMP II,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed May 11, 2018.
Affirmed.

*Nicholas David*, of The David Law Office LLC, of Topeka, for appellant.

*Taylor Hines*, legal intern, *Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*,
district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., BUSER and ATCHESON, JJ.

BUSER, J.:  After entering into a plea agreement with the State, Thomas D. Shump II pled no contest to certain crimes in two separate criminal cases in exchange for the State's promise to recommend a controlling suspended sentence of 12 months in jail and 12 months' supervised probation. At sentencing, the district court declined to impose the agreed-upon sentence and instead imposed a controlling suspended sentence of 24 months with 12 months' supervised probation. Shump appeals, asserting that the State violated the terms of the plea agreement. We affirm the district court.

1

Shump and Camille Eichorn had previously been in a relationship. In January 2016, after Eichorn ended the relationship, Shump sent Eichorn numerous harassing phone messages that contained rude allegations and called her vulgar names. As a result, the State charged Shump with harassment by telecommunication device, violation of a protective order, and intimidation of a witness in case No. 16CR175 (the harassment case). Several months later, on July 7, 2016, Shump damaged Austin Bahr's car windshield and then ran from the police. As a result, Shump was charged with criminal damage to property and interference with law enforcement in case No. 16CR708 (the criminal damage/interference case).

On October 20, 2016, Shump and the State entered into a plea agreement to resolve both criminal cases. Under the agreement, Shump would plead no contest to harassment by a telecommunication device in the harassment case. In return, the other two charges were dismissed. The State would recommend a 6-month suspended sentence with 12 months' probation. In the criminal damage/interference case, Shump agreed to plead no contest to both charges. In return, the State agreed to recommend a 6-month suspended sentence on each count to run concurrently with each other and 12 months' probation. The sentences imposed in each case were to run consecutive to each other.

On the same day the plea agreement was made, October 20, 2016, a plea and sentencing hearing was jointly held in both cases. At the hearing, the State accurately stated the terms of the plea agreement with Shump. Shump acknowledged that the State's description of the plea agreement was correct. After Shump pled no contest to the agreed-upon charges in both cases, the district court proceeded immediately to sentencing.

At sentencing, the district court first asked the State if it had any comments. The State informed the district court that Eichorn was comfortable with the plea agreement

but that Bahr wanted to address the court regarding the criminal damage/interference case. Bahr then personally addressed the district court.

At the outset, Bahr stated that Shump had many traits of "sociopathic and/or narcissistic personality disorder," noting that he was a "compulsive liar" and delusional. Bahr also stated he was disappointed Shump was not charged with assault as his intent was to break Bahr's windshield and cause him bodily harm. Bahr stated that allowing Shump to avoid jail time would not benefit anyone and blaming Shump's actions on passion or psychiatric issues allows "him to avoid repercussions which he deserved." Pointing to Shump's repeated violation of court orders, Bahr said Shump "feels he is beyond the law."

At this point, Shump's attorney objected on the grounds that Bahr was not competent to accuse Shump of having personality disorders and his allegations were not relevant to this case. The district court overruled the objection, reasoning that it was an appropriate time for Bahr to express his feelings about being a crime victim. Bahr concluded:

> "I hope [Shump] gets the psychiatric help he needs; but in my opinion, this is not enough. He needs real repercussions and time to repent for his behavior in prison. I feel in not doing so, he will only emotionally abuse the next woman in his life and continue to threaten their friends and family because he will see he has gotten away with this. That is my statement."

Both Shump and his attorney then addressed the court. In particular, Shump asked the district court to follow the plea agreement.

The district court departed from the plea agreement and sentenced Shump to a 12-month suspended jail sentence in the harassment case and a 12-month suspended sentence in the criminal damage/interference case with the sentences to run consecutively

3

for a controlling 24-month term. Shump was placed on a 12-month probation in both cases. The district court also ordered Shump to pay restitution to Bahr.

Shump appeals.

## THE STATE DID NOT VIOLATE THE PLEA AGREEMENT

On appeal, Shump contends his right to due process was violated because the State breached the plea agreement. Shump argues the State violated the plea agreement in two ways: (1) by failing to recommend the sentence agreed to by the parties and (2) by undermining the agreed-upon sentence by allowing Bahr to speak forcefully regarding the crime's impact upon him. Shump asks our court to vacate the sentences and remand for resentencing before a different judge. The State counters that it did not violate the plea agreement because it was not required to restate the terms of the plea agreement at sentencing and Bahr was entitled to give a victim's impact statement at sentencing.

Our standard of review provides that a claim that the State breached a plea agreement presents a question of law over which this court exercises unlimited review. *State v. Antrim*, 294 Kan. 632, 634, 279 P.3d 110 (2012).

A plea agreement is a contract between the State and the defendant, and both parties must perform the promises they exchanged. See *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971); *State v. Woodward*, 288 Kan. 297, 300, 202 P.3d 15 (2009). The parties to a plea agreement "must act fairly and in good faith in carrying out the promises they have made." *State v. Urista*, 296 Kan. 576, 583, 293 P.3d 738 (2013). "If the State fails to fulfill a promise it made in a plea agreement, the defendant is denied due process." 296 Kan. at 583.

4

When the State fails to uphold its end of the agreement, our court must decide whether justice requires the State's promise to be fulfilled or whether the defendant may be allowed to withdraw the plea. *Woodward*, 288 Kan. at 300. A due process violation occurs with any breach, even if the sentencing judge was not influenced by the State's statements at sentencing. *Urista*, 296 Kan. at 583. If the defendant raises a timely objection to the State's breach, such a breach is harmless only if a court can say beyond a reasonable doubt that the State's promise regarding the sentencing recommendation had little, if any, influence on the defendant's decision to enter the guilty plea. 296 Kan. at 594-95.

Pertinent to this appeal:

"There are at least two ways for the State to breach a promise to make a recommendation:  (1) It can fail to make a sentencing recommendation to the district court that it promised it would make; or (2) it can make the recommendation but still breach the agreement by making additional comments at sentencing that effectively undermine its recommendation. [Citation omitted.]" *State v. Jones*, 302 Kan. 111, 116-17, 351 P.3d 1228 (2015).

In this case, Shump asserts the State breached its promises under the plea agreement for both of the reasons identified in *Jones*. We will individually address them.

*The State Recommended Sentencing Pursuant to the Plea Agreement*

"When the State promises, as part of a plea agreement, to recommend a particular sentence, due process demands action in conformity to the agreement." *State v. Chesbro*, 35 Kan. App. 2d 662, 675, 134 P.3d 1 (2006). In this case, the plea and sentencing hearing was one continuous proceeding. During the plea portion, the State properly advised the district court of the terms of the plea agreement. Shump complains, however, that during the sentencing portion of the hearing the State did not repeat its agreed-upon

sentencing recommendations. As a consequence of this omission, Shump claims the State violated the plea agreement.

In *State v. Hill*, 247 Kan. 377, 799 P.2d 997 (1990), our Supreme Court addressed whether the State was required to explicitly state at the sentencing hearing that it recommended an agreed-upon sentence. In *Hill*, the terms of the plea agreement were announced at a plea hearing which occurred on October 24, 1988. At sentencing before the same judge almost two months later, the State did not specifically state that it was recommending the agreed-upon sentence, but instead referred the district court to the sentencing agreement in the presentence investigation.

Our Supreme Court found the State was not required to restate the agreement's terms at sentencing because "[t]he same judge presided at all hearings and, without question, was aware that the State had agreed to recommend a controlling term of two consecutive life sentences. Furthermore, the State made no recommendation contrary to the agreement made known to the judge." 247 Kan. at 383-84; see also *Chesbro*, 35 Kan. App. 2d at 675-76 (No reversible error when State fails to make a sentencing recommendation at sentencing when the district court is otherwise aware that the State joined in the sentencing recommendation.).

In the present case, the State was not required to reiterate during the sentencing portion of the plea and sentencing hearing what it had recommended only minutes earlier in the plea portion of the hearing. As in *Hill*, the prosecutor agreed to recommend a certain sentence and did in fact recommend that agreed-upon sentence to the district court. In both cases, the district court was fully aware of the details of the plea agreement because the plea and sentencing hearing was presided over by the same judge. Moreover, unlike in *Hill* where there was almost two months between the plea hearing and the sentencing hearing, the combined hearing here was conducted at the same time on the same day. As a result, the district court was fully aware of the State's recommendations.

6

We find the State did not breach its agreement to recommend the agreed-upon sentences in both cases.

*The Plea Agreement Was Not Undermined by Allowing the Victim to Address the Court*

"Due process does not require the State to argue 'enthusiastically' in favor of a sentencing recommendation, absent a specific agreement to do so." *Chesbro*, 35 Kan. App. 2d at 676. Indeed, "due process did not require the Government to do more than acknowledge its concurrence with the defense request." 35 Kan. App. 2d at 675. "But even when the State makes the sentencing recommendation that it promised it would make, it can still breach the plea agreement by making additional comments at sentencing that effectively undermine its sentencing recommendation." *Urista*, 296 Kan. at 584. Shump contends the State effectively undermined any sentencing recommendation by offering Bahr's victim impact comments.

At the outset, while victims have a relationship with the State during a criminal case, crime victims are not necessarily under the State's control. Under the Kansas Constitution, "[v]ictims of crime, as defined by law, shall be entitled . . . to be heard at sentencing or at any other time deemed appropriate by the court, to the extent that these rights do not interfere with the constitutional or statutory rights of the accused." Kan. Const. art. 15, § 15(a). This section of the Kansas Constitution "specifically permits the victims of crimes to be heard at sentencing as long as the defendant's constitutional and statutory rights are not violated." *State v. Gideon*, 257 Kan. 591, 608, 894 P.2d 850 (1995).

Moreover, K.S.A. 2017 Supp. 22-3424(e) provides: "Before imposing sentence the court shall . . . allow the victim or such members of the victim's family as the court deems appropriate to address the court, if the victim or the victim's family so requests." As a result, the prosecutor is without discretion to prevent victim testimony if the victim

7

asks to address the court. *Chesbro*, 35 Kan. App. 2d at 674. "As such, the prosecutor cannot control through plea agreement the right created by statute for the victim or the victim's family to be heard at sentencing." 35 Kan. App. 2d at 674. Accordingly, this court has repeatedly held as a general rule that statements made by victims do not violate the State's obligations under a plea agreement. See 35 Kan. App. 2d at 674; *State v. Perry*, No. 108,280, 2013 WL 3455805, at *5 (Kan. App. 2013) (unpublished opinion).

For his part, Shump argues that pursuant to *Urista*, the State breaches a plea agreement by offering an inflammatory victim impact statement. Shump's reading of *Urista* is overly broad. In *Urista*, although the State asked the court to follow the sentence in the plea agreement, the prosecutor gave an "extensive statement" regarding the defendant's lengthy juvenile record, gang affiliation, and information from victim impact statements. 296 Kan. at 579. Our Supreme Court found that the prosecutor's statement did "not constitute a mere factual description of the crimes or a summary of the victims' statements." 296 Kan. at 593. Rather, the court determined

> "the comments at issue here were an example of the prosecutor giving her personal opinion regarding Urista based upon her prior involvement with him, her review of the facts, and the victims' statements. In other words, the prosecutor not only engaged in providing a negative editorial, but a particularly grave summation regarding Urista based on these observations. Such comments can be viewed as effectively arguing against the parties' recommended sentence." 296 Kan. at 593.

Our Supreme Court then reasoned that the prosecutor did not act in good faith because her comments were "unprovoked and unnecessary," thus leaving one to conclude she attempted to have the district court impose a greater sentence than recommended. 296 Kan. at 594. As a consequence, the Supreme Court found the prosecutor's statements effectively undermined the sentencing recommendation, thus violating the plea agreement. 296 Kan. at 594.

8

Shump's reliance on *Urista* is misplaced. Unlike the defendant's allegations in *Urista*, the statements Shump complains of were personally made by the victim and not the prosecutor. The prosecutor here did not render a personal opinion or a "grave summation" regarding the defendant or Bahr's statements. 296 Kan. at 593. Moreover, allowing Bahr to give a victim impact statement was not "unprovoked and unnecessary," but rather in compliance with K.S.A. 2017 Supp. 22-3424(e) and our Kansas Constitution.

While Bahr's statements were provocative, Shump does not base his claim of a due process violation on the nature of Bahr's courtroom comments. Issues not briefed are deemed waived or abandoned. *State v. Warledo*, 286 Kan. 927, 938, 190 P.3d 937 (2008). Instead, Shump bases his claim on the State's use of the victim's statements to allegedly undermine the recommended sentences. But in the present case, "there is no evidence within the record that the State solicited" the victim statements. *Chesbro*, 35 Kan. App. 2d at 674.

Because Shump has not shown that the prosecutor employed Bahr's courtroom comments as a vehicle for undermining the State's sentencing recommendations, it is unclear how these statements are attributable to the State. On the contrary, we are persuaded the State simply afforded Bahr his constitutional and statutory rights as a victim to address the district court regarding the impact the crime had upon him. See *Gideon*, 257 Kan. at 605. We find no error.

In conclusion, the State did not breach the plea agreement and Shump's right to due process was not violated. The sentences are affirmed.