NOT DESIGNATED FOR PUBLICATION

No. 119,430

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

FADIL KASA,
*Appellant*.


MEMORANDUM OPINION


Appeal from Crawford District Court; KURTIS I. LOY, judge. Opinion filed August 23, 2019. Convictions reversed, sentences vacated, and case remanded with directions.


*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.


*Michael Gayoso, Jr.*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before SCHROEDER, P.J., GREEN and POWELL, JJ.


POWELL, J.: As part of a plea agreement with the State, Fadil Kasa pled no contest to two counts of aggravated sexual battery. However, unbeknownst to him, a special sentencing rule— K.S.A. 2018 Supp. 21-6804(j), which doubles the sentence of a defendant found to be a persistent sex offender—applied to Kasa due to a prior Illinois conviction for aggravated criminal sexual abuse. Kasa's plea counsel, who was also unaware of this rule, admitted to this oversight at sentencing even though he knew of Kasa's prior Illinois conviction. As a result of the application of the special sentencing rule, Kasa was sentenced to prison for a much longer term than anticipated. After sentencing, Kasa obtained new counsel and sought to withdraw his pleas on the grounds

1

that he had not been informed about the persistent sex offender sentencing rule prior to entering his plea. The district court denied his motion, finding he had failed to establish manifest injustice. Kasa now appeals, claiming his plea counsel's ineffectiveness entitles him to withdraw his pleas. For reasons we explain below, we agree with Kasa that he should have been allowed to withdraw his pleas. Accordingly, we reverse Kasa's convictions, vacate his sentences, and remand the case to the district court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Kasa in an amended complaint with one count of rape, one count of kidnapping, and three counts of aggravated sexual battery. A criminal history worksheet mailed to Kasa's counsel showed Kasa had a prior Illinois conviction for aggravated criminal sexual abuse of a victim between the ages of 13 and 16 and a prior Illinois conviction for failing to annually report. The worksheet scored Kasa's criminal history as C.

*The Plea Hearing*

At the June 2016 plea hearing, Kasa's plea counsel recited the plea agreement with the State. Under the agreement, Kasa would plead no contest to two counts of aggravated sexual battery. In exchange, the State agreed to dismiss the remaining charges against Kasa and not charge him with multiple counts of failing to register as a sex offender in Kansas. At sentencing, Kasa would be prohibited from seeking a departure sentence but could request concurrent sentences while the State could recommend consecutive sentences. Kasa's counsel stated that the parties entered into the plea agreement with the understanding that Kasa had a criminal history score of C.

The district court asked if any special rules would apply at sentencing. Kasa's counsel replied he was aware of none. The prosecutor also did not believe so but advised the district court Kasa would be subject to lifetime registration because of his prior sex crime conviction.

Among other things, the district court inquired and Kasa confirmed he understood the charge of aggravated sexual battery was a severity level 5 person felony and carried a possible incarceration of 31 to 136 months, 24 months' postrelease supervision, and a possible fine of $300,000. The district court made the same disclosures for the second count of aggravated sexual battery and asked if Kasa understood that because of his prior conviction, he would be subject to lifetime registration as a sexual offender. Kasa confirmed he understood. The district court inquired if Kasa was satisfied with the services he received from his attorney and if he had sufficient time to discuss the case with his attorney. Kasa confirmed his satisfaction with counsel. Kasa's attorney confirmed that he believed he had a sufficient opportunity to investigate and analyze the case and—after an investigation—he believed that Kasa had a criminal history score of C. Kasa confirmed he understood the importance of his criminal history score on his sentencing.

After reviewing the effect of Kasa's pleas on his constitutional rights, the district court asked and Kasa confirmed that he had not been influenced by threats, coercion, or otherwise persuaded against his will to enter a plea. Kasa confirmed that no promises were made in exchange for the entry of his plea and that he understood the district court was not bound by the plea agreement. After the district court again reviewed the terms, Kasa confirmed he understood the plea agreement. The State submitted a factual basis for the charges. The district court inquired and Kasa denied entering a plea for any reason not disclosed previously at the hearing. Kasa also confirmed he understood all the discussions.

The district court found that a sufficient factual basis supported the two counts of aggravated sexual battery and accepted Kasa's no contest pleas upon finding that he entered them voluntarily and knowingly. The district court also found that Kasa understood the charges against him and the consequences of his pleas. As a result, the district court found Kasa guilty of two counts of aggravated sexual battery and ordered a presentence investigation (PSI) report.

*The PSI and the Sentencing Hearing*

In August 2016, Kasa's PSI was filed with the district court. The PSI scored Kasa's criminal history as B based on a prior conviction of aggravated criminal sexual abuse of a victim between the ages of 13 and 16 and a prior conviction for failure to annually report. The PSI also provided that a special sentencing rule applied: "Persistent Sex Offender – presumed prison – double the maximum duration. K.S.A. 21-6804(j)."

At the sentencing hearing held in October 2016, Kasa confirmed the PSI accurately reflected his prior convictions and stated he did not object to his criminal history score of B. The State argued that if the district court found Kasa's prior Illinois conviction for aggravated criminal sexual abuse was a violent sexual offense under Kansas statute, then Kasa would be deemed a persistent sex offender and special sentencing rule number 5 would apply. As a result, the district court would be prohibited from including Kasa's prior Illinois conviction for aggravated criminal sexual abuse in his criminal history, thus reducing his criminal history score to D, and would be required to double the maximum sentence, which would equate to 110 months in prison on the first count. The State also argued that application of the special sentencing rule might prevent the district court from ordering consecutive sentences. If the district court did not make a special sentencing rule finding, the State recommended the district court sentence Kasa to 120 months in prison.

4

Kasa's attorney admitted that neither party considered application of the persistent sex offender sentencing rule during plea negotiations. Instead, counsel argued the State agreed to request consecutive sentences that would amount to no more than 94 months and defense counsel would argue for a concurrent sentence that would amount to 60 months. Defense counsel acknowledged Kasa had agreed not to pursue a departure under the plea agreement but requested the district court to order a sentence as close to 94 months as possible.

The district court ultimately found Kasa's prior Illinois sex crime conviction made him a persistent sex offender under K.S.A. 2018 Supp. 21-6804(j). As a result, the district court found Kasa's criminal history score to be D, sentenced Kasa on the first count to the maximum sentence of 55 months, then doubled that sentence to 110 months. On the second count, the district court imposed a 34-month prison sentence and ordered Kasa to serve consecutive sentences, for a total of 144 months in prison. The district court also imposed lifetime postrelease supervision, lifetime electronic monitoring, and lifetime registration as a sexual offender. Based on the parties' arguments, the district court scheduled a restitution hearing for a later date.

Kasa subsequently filed a motion to correct an illegal sentence. At the hearing on that motion, the district court denied Kasa's challenge to the length of his sentence but vacated its order of lifetime electronic monitoring. The district court also ordered Kasa to pay restitution to one of his victims. No direct appeal followed.

*Motion to Withdraw Plea*

After his plea attorney withdrew from the case, Kasa filed a motion to withdraw plea with the assistance of new counsel. At the hearing on this motion, Kasa confirmed that he understood the withdrawal of his pleas meant he could not keep the plea agreement, the original charges would be reinstated, and the State could charge him with

5

more crimes. Kasa testified that at the plea hearing he believed he would receive a 60-month sentence and that he would not have entered the pleas if he had known he could receive a 144-month sentence. Kasa stated he was wrongly informed about his sentence from the start, he never had a good conversation with his attorney, and his attorney did not return his phone calls.

But Kasa admitted on cross-examination that at the time he entered his pleas, the district court had informed him and he had understood the possible sentences were 31 to 136 months for each charge. Kasa also admitted that at the plea hearing he stated he understood the consequences of entering the pleas and the importance of his criminal history.

The district court denied his motion to withdraw plea. The district court held Kasa was represented by competent counsel. Because Kasa was informed each count would carry a sentencing range of 31 to 136 months in prison and his sentence fell within the guidelines, the district court held Kasa was not misled, coerced, or taken advantage of. Finally, the district court found Kasa entered a knowing and voluntary plea because he was informed of the sentencing range, Kasa understood that the district court was not required to follow the plea agreement, and the district court had discretion to enter concurrent or consecutive sentences.

Kasa timely appeals.

## DID THE DISTRICT COURT ERR IN DENYING KASA'S POSTSENTENCE MOTION TO WITHDRAW PLEA?

Kasa does not challenge the district court's decision to apply the persistent sex offender sentencing rule under K.S.A. 2018 Supp. 21-6804(j). Instead, he primarily

6

contests whether he was able to make a knowing, understanding, or otherwise voluntary plea without being advised of his maximum sentence under the special sentencing rule.

A district court's ruling on a motion to withdraw plea after sentencing will not be reversed absent an abuse of discretion. *State v. Miles*, 300 Kan. 1065, 1066, 337 P.3d 1291 (2014). An abuse of discretion occurs when the district court's decision is based on an error of fact or law or when no reasonable person would agree with the view taken by the court. See *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). Kasa bears the burden of establishing an abuse of discretion. See *State v. Edgar*, 281 Kan. 30, 38, 127 P.3d 986 (2006). The district court's factual findings are reviewed for substantial competent evidence. *State v. Miller*, 293 Kan. 535, 547, 264 P.3d 461 (2011). "Appellate courts do not reweigh the evidence or assess witness credibility. Instead, appellate courts give deference to the trial court's findings of fact." *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011).

"To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." K.S.A. 2018 Supp. 22-3210(d)(2). Manifest injustice has been defined as something that is "obviously unfair or shocking to the conscience." *State v. Barahona*, 35 Kan. App. 2d 605, 608-09, 132 P.3d 959, *rev. denied* 282 Kan. 791 (2006). Factors a court generally considers in determining if a defendant has shown the necessary manifest injustice are "'(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made.'" *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018); see *Edgar*, 281 Kan at 36. However, not all of these factors have to apply to the benefit of the defendant, and other factors may be considered by the district court in the exercise of its discretion. *Johnson*, 307 Kan. at 443.

A.     *Was Kasa Represented by Competent Counsel?*

Kasa's principal argument is that he should be allowed to withdraw his pleas because his plea counsel provided ineffective assistance before and at his plea hearing by failing to properly inform him of the consequences; specifically, that due to a prior sexual offense conviction, he was subject to the persistent sex offender sentencing rule which mandated the doubling of his sentence.

> "'When a postsentence motion to withdraw a plea alleges ineffective assistance of counsel, the constitutional test for ineffective assistance must be met to establish manifest injustice.' That test asks: '(1) whether the attorney's performance fell below an objective standard of reasonableness and (2) whether there is a reasonable probability that, but for the attorney's errors, the result of the proceeding would have been different.' There is a 'strong presumption' that counsel provided '"adequate assistance"' and '"made all significant decisions in the exercise of reasonable professional judgment."' Prejudice means 'a reasonable probability that, but for the deficient performance, the defendant would have insisted on going to trial instead of entering the plea.' A reasonable probability is a '"probability sufficient to undermine confidence in the outcome."' [Citations omitted.]" *Johnson*, 307 Kan. at 447.

An ineffective assistance of counsel claim contains mixed questions of fact and law, and an appellate court "reviews the underlying factual findings for substantial competent evidence and the legal conclusions based on those facts de novo." *Boldridge v. State*, 289 Kan. 618, 622, 215 P.3d 585 (2009).

In order to provide reasonable representation to a defendant in plea negotiations, "defense counsel has an obligation to advise the defendant as to the range of permissible penalties and to discuss the possible choices available to the defendant." *State v. White*, 289 Kan. 279, Syl. ¶ 5, 211 P.3d 805 (2009).

"Both the prosecutor and defense counsel have certain obligations in plea bargaining. It is improper for the prosecutor to induce a guilty plea by misrepresentations of the law or by unfulfillable promises. Likewise, the defense counsel is obligated to fully and frankly advise his client as to the range of permissible penalties and the possible choices open to him. Failure to fulfill these obligations can have a significant effect on the voluntariness of an accused's guilty plea. [Citations omitted.]" *Morrow v. State*, 219 Kan. 442, 445-46, 548 P.2d 727 (1976).

A persistent sex offender is one who is convicted of a sexually violent crime and who has a previous conviction for a sexually violent crime. K.S.A. 2018 Supp. 21-6804(j)(2)(A). A special sentencing rule exists for persistent sex offenders: "The sentence for any persistent sex offender whose current convicted crime carries a presumptive term of imprisonment shall be double the maximum duration of the presumptive imprisonment term." K.S.A. 2018 Supp. 21-6804(j)(1). It is undisputed by the parties that Kasa's convictions of two counts of aggravated sexual battery and his prior Illinois conviction for aggravated sexual abuse classified Kasa as a persistent sex offender, thus subjecting him to the special sentencing rule.

However, Kasa's plea counsel admitted at sentencing that the parties had not contemplated the application of the persistent sex offender sentencing rule before Kasa entered his plea. The record confirms that both parties were aware of Kasa's prior Illinois conviction from 2004 for aggravated criminal sexual abuse of a victim between the ages of 13 and 16 under 720 Ill. Comp. Stat. § 5/12-16(d) from the criminal history worksheet. But, both parties informed the district court during the plea hearing they believed no special sentencing rules applied before Kasa entered his plea.

As Kasa argues on appeal, he sought to substantially limit the term of imprisonment as part of his plea agreement with the State. This was evidenced by the State's agreement to drop several charges, not file new ones, and allow Kasa to seek concurrent sentences for each count. Kasa's plea counsel's ignorance of the persistent sex

9

offender sentencing rule greatly undermined the efforts made during plea negotiations as the rule doubled Kasa's potential sentence. Moreover, ignorance of this special sentencing rule compounded Kasa's difficulties because the plea agreement also prohibited him from seeking a departure sentence.

The district court found Kasa had competent plea counsel. However, from a review of the record, the district court did not consider how plea counsel's failure to advise Kasa of the persistent sex offender sentencing rule impacted his ability to enter a knowing, understanding, and voluntary plea. Contrary to the district court's finding, we conclude plea counsel's ignorance of the applicability of the persistent sex offender sentencing rule and failure to advise Kasa of its impact on his possible sentence fell below the reasonable standard of professionalism expected by clients accused of sex crimes during plea negotiations.

Having established the deficient performance on the part of his plea counsel, Kasa is now required to show prejudice, meaning he likely would have requested a trial if not for his counsel's deficient performance. See *Johnson*, 307 Kan. at 447. At the hearing on his motion to withdraw plea, Kasa testified he understood that the benefits he gained from the plea agreement would be nullified and that the State would have the option to file additional charges. Nevertheless, Kasa indicated he wanted to withdraw his pleas and insisted that if he had been aware of the persistent sex offender sentencing rule, then he would not have entered into the plea agreement. This evidence was largely uncontroverted by the State. We have no trouble concluding that plea counsel's deficient performance prejudiced Kasa and that there was a reasonable probability that Kasa would not have entered into his plea agreement with the State had he been informed about the persistent sex offender sentencing rule.

10

B.      *Was Kasa Misled, Coerced, Mistreated, or Unfairly Taken Advantage of?*

The district court concluded that Kasa had not been misled, coerced, mistreated, or unfairly taken advantage of when entering his plea. Again we must disagree. As Kasa correctly argues, both his plea counsel and the State represented to the district court upon specific questioning that no special sentencing rule applied when, in fact, a special rule did apply:  the persistent sex offender sentencing rule. Kasa indicated that had he been aware of the special rule, he would have not entered into his plea. Kasa was misled.

C.      *Was the Plea Fairly and Understandably Made?*

Kasa argues that his plea was not fairly and understandably made because he was unaware of the persistent sex offender sentencing rule. The State attempts to deflect this argument by asserting that the district court was not under an obligation to inform Kasa of the applicability of the persistent sex offender sentencing rule, relying on *State v. Chesbro*, 35 Kan. App. 2d 662, 672-73, 134 P.3d 1, *rev. denied* 282 Kan. 792 (2006). We consider *Chesbro* unhelpful to the State and easily distinguishable because it does not address Kasa's real argument:  His plea counsel did not inform him of the possible application of the persistent sex offender sentencing rule.

The law requires a judge who accepts a felony guilty or no contest plea to inform the defendant of the consequences of the plea, including the maximum possible penalties for the crimes contained in the plea. K.S.A. 2018 Supp. 22-3210(a)(2). If the district court fails to properly inform the defendant, this error can be considered harmless and the plea can still be valid if the purpose of the statute is met in another manner, that is, if the defendant is properly informed through the written plea agreement, plea counsel, or in some other way. Conversely, if the written plea agreement or plea counsel fails to inform the defendant of the consequences of the plea, that failure can be cured by the district court through the plea colloquy. *White*, 289 Kan. at 287.

11

*Chesbro* is unhelpful to the State because, unlike here, the defendant was informed of the persistent sex offender sentencing rule by plea counsel. In *Chesbro*, the defendant appealed the district court's denial of his motion to withdraw plea, claiming the district court did not adequately inform him of the possible persistent sex offender sentencing rule. However, Chesbro was specifically granted a continuance at sentencing to allow his counsel to confer with him concerning the possible application of the persistent sex offender sentencing rule. Thus, Chesbro was aware of the special sentencing rule even if the district court had not informed him. The *Chesbro* panel held that under the circumstances the district court's failure to inform the defendant of the maximum penalty under the persistent sex offender sentencing rule did not render the defendant's plea unknowing or involuntary. 35 Kan. App. 2d at 672-73; see *State v. Dwerlkotte*, No. 99,581, 2009 WL 500992, at *5-6 (Kan. App. 2009) (unpublished opinion) (harmless error for district court failing to inform defendant of persistent sex offender sentencing rule when defendant aware of rule).

It is undisputed that Kasa was unaware of the special sentencing rule at the time he entered his plea. Neither Kasa's plea counsel nor the district court advised Kasa of the potential application of the persistent sex offender sentencing rule. Also, the district court did not expressly advise Kasa he could receive a total maximum sentence up to 272 months but, instead, advised him each count carried a sentencing range from 31 to 136 months. We find the undisputed fact that Kasa was not made aware of the application of the persistent sex offender sentencing rule renders Kasa's pleas not fairly and understandingly made. Accordingly, Kasa has established sufficient manifest injustice to justify the withdrawal of his pleas. The district court erred in holding otherwise.

We reverse Kasa's convictions, vacate his sentences, and remand the case for further proceedings consistent with this opinion.

Convictions reversed, sentences vacated, and remanded with directions.