**Erroll BRUNER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–78–205.**

Court of Criminal Appeals of Oklahoma.

June 24, 1980.

Mary E. Bane, Oyler & Smith, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., David W. Lee, Asst. Atty., Gen., Mary Bryce Leader, Legal Intern, for appellee.

## OPINION

CORNISH, Presiding Judge:

This is an appeal from a conviction in the District Court of Oklahoma County, Case No. CRF–77–1748 for Rape in the First Degree. Punishment was set at fifty (50) years' imprisonment.

The prosecutrix and her boyfriend were hitchhiking on April 24, 1977, when picked up by the appellant on an interstate off-ramp in Oklahoma City about 8:00 p. m. The appellant, driving a silver and black Cadillac, took the pair to an abandoned grocery store, where he spoke to some friends, and then drove toward an old shack. Upon arriving, there, the driver said he would take the prosecutrix as payment for the ride. A struggle ensued in the Cadillac. The hitchhikers broke away and ran toward the nearby interstate. The appellant chased the pair and caught the prosecutrix; the boyfriend escaped. The prosecutrix was dragged back to the Cadillac and raped by the appellant while Sammy Graves held her down.

Following this act of intercourse the prosecutrix put her clothes back on and was taken to the back of a shack, thrown onto a mattress and forced to remove her clothes. Both there and inside the shack she again was raped by a group of the appellant's friends. The prosecutrix finally escaped, only to be caught by the appellant's companions and taken to a cubicle under a bridge. There, she was again forcibly raped. Ultimately, she escaped and struggled to the top of the bridge where she was

rescued by passers-by. All of the afore-mentioned incidents took place in close proximity in time and constituted a continuous chain of events.

## I

The prosecution elected to try the appellant for the rape that occurred in the appellant's car, but the trial court admitted evidence of other crimes. Therefore, the appellant alleges he was denied his right to a fair and impartial trial. Specifically complained of are (1) the admission of rapes that took place in the shack and in the cubicle under the bridge, subsequent to the rape in the Cadillac; (2) the testimony of Dr. Gary Septon who was allowed to testify that because oral sex was involved he had the prosecutrix chew on cotton balls to obtain an analysis; (3) evidence of the analyses of bedcovers, sheets and the carpet in the shack by a forensic chemist; and (4) evidence of the theft of the prosecutrix's purse.

It is argued that the admission of this evidence of other crimes was error because there was no evidence that the appellant had intercourse with the prosecutrix after the rape in the automobile, and the appellant was never charged with sodomy. The prosecutrix testified that she could not say the appellant was behind the shack when her clothes were removed or inside the shack when the other acts of intercourse occurred. But accomplice Sammy Graves, who was granted immunity from prosecution, testified that the appellant was one of the men who took the prosecutrix to the shack, and he further testified to the appellant's presence inside the shack.

We observe that the prosecutrix did affirmatively testify that the appellant was not present when she was taken to the cubicle under the bridge where the other rapes and/or sodomy occurred, and that the appellant did not participate at that time.

Although the prosecution was allowed to produce evidence of events later in the evening, the trial court admonished the jury as to how they should consider the evidence.

By both oral admonishment and written Instruction No. 6, the jurors were told they could consider the alleged rapes inside the shack for the purpose of motive, intent, identification, plan or scheme.[1]

The rule is fundamental that evidence of separate and similar offenses is not admissible against an accused on trial for another separate and similar offense. *Atnip v. State*, Okl.Cr., 564 P.2d 660 (1977). However, there are five exceptions to this time-honored precept of law. Evidence of other offenses may be admissible where it tends to establish motive, intent, absence of mistake or accident, identity or a common scheme or plan which embraces the commission of two or more crimes so related to each other that proof of one tends to establish the other. *Atnip v. State*, supra.

In addition, this Court has held that where the offense charged is so connected with other offenses as to form a part of an "entire transaction" evidence of other offenses may be admissible to show the character of the offense charged. *Miles v. State*, Okl.Cr., 554 P.2d 1200 (1976). And, where there is a "logical connection" with the offense charged, evidence of separate and independent crimes may be admitted. *Bray v. State*, Okl.Cr., 450 P.2d 512 (1969).

More recently in *Burks v. State*, Okl. Cr., 594 P.2d 771 (1979), we reaffirmed our earlier rule that for "evidence of other offenses to be admissible, there must be a visible connection between the crimes," citing *Roulston v. State*, Okl.Cr., 307 P.2d 861 (1957). Applying these rules to the case at bar, we conclude that the extraneous criminal transactions have both probative value and a logical relevancy to the crime charged so as to be admissible. Clearly perceiving this visible connection, we hold that the trial court correctly admitted the evidence of other crimes.

## II

The appellant next complains that a delay of nine days between commission of

---

1. Admittedly, the meaning of those terms was not explained or defined for the jury. Nor was the jury told which exception was relied upon for admissibility by the trial judge.

the alleged rape in the Cadillac and the retrieval of certain physical evidence (hairs and semen stains from the shack) was so tainted as to have been inadmissible, and rendered the testimony of the forensic chemist thereon inadmissible. Relying heavily on *Conde-Hernandez v. State*, Okl. Cr., 565 P.2d 705 (1977), the appellant argues that the State failed to adequately prove the chain of custody so as to warrant their introduction of the chemical analyses results into evidence. However, we must agree with the State that this is not a chain of custody issue. The protection afforded by chain of possession is to insure that between the time the evidence is found and analyzed there has been no tampering with the evidence. See *Contu v. State*, Okl.Cr., 533 P.2d 1000 (1975). The record before us is devoid of a finding of substitution or tampering with the evidence after it was found.

The question then becomes one of remoteness. Under somewhat similar circumstances in *Rawls v. State*, Okl.Cr., 226 P.2d 984 (1951), we said the lapse of time between the date of the alleged crime and the chemical analysis of physical evidence might affect the weight but not the admissibility of the evidence.[2] We hold that the nine day lapse of time did not strip the evidence of its probative value and that it was properly admitted.

### III

In seeking modification or reversal, the appellant next complains that three prosecution witnesses injected evidentiary harpoons into the case, thereby denying him the right to a fair and impartial trial. He concedes, however, that defense counsel failed to object at trial to the testimony of two of these witnesses. It is well settled that unless objection is made to evidentiary harpoons any errors are waived and cannot be raised for the first time on appeal. *Webb v. State*, Okl.Cr., 586 P.2d 78 (1978); *Witherspoon v. State*, Okl.Cr., 567 P.2d 993 (1977).

The only alleged harpoon properly preserved for review occurred when the prosecutrix testified regarding her boyfriend, "they told me they'd killed him."[3] Her statement refers to a remark made to her in a car by persons who caught her after she ran away from the shack—a group from which she expressly excluded the appellant.

Defense counsel objected to this statement, and the trial court warned the prosecutor he would have to show its relevancy. After the prosecutrix explained the statement, the judge overruled the objection, admonishing the jury that the prosecutrix was only explaining her actions and conduct.

A review of the case law reflects the presence of certain features when this Court has found an evidentiary harpoon: (1) they are generally made by experienced police officers; (2) they are voluntary statements; (3) they are wilfully jabbed rather than inadvertent; (4) they inject information indicating other crimes; (5) they are

---

**2.** In *Rawls v. State*, supra, involving a prosecution for attempted rape, the trial court admitted a chemist's testimony concerning the microscopic examination of the alleged victim's underpants made some 80 days after the alleged crime.

**3.** On cross-examination, defense counsel quizzed the prosecutrix about not immediately contacting the police when picked up by passers-by:

"Q. Did you ask any of these people to take you to the police department?
"A. I asked them to take me looking for Kenny.
"Q. Just to look for Kenny, not the police department?
"A. Yes.

"Q. How long did you spend looking for Kenny?
"A. A long time.
"Q. A long time. Would you say three, four hours?
"A. I don't know.
"Q. Was it daylight when you quit looking for him?
"A. It was almost.
"Q. What type areas did you look for him at?"
On redirect, the prosecutor asked the prosecutrix:
"Q. Okay. Now, why was it you were looking for Kenny?"
The response was: "Because they told me they'd killed him."

calculated to prejudice the defendant; and (6) they are prejudicial to the rights of the defendant on trial.[4]

While the appellant recognizes we have repeatedly condemned police officers for injection of evidentiary harpoons, he argues that the rule similarly should apply to a lay prosecution witness. While this Court does not disagree, we would observe that defense counsel opened up the subject of the appellant's search for the prosecutrix' boyfriend during cross-examination. Hence, the inquiry on redirect and the prosecutrix' response was within the scope of redirect. We fail to see how this testimony comes within the definition of an evidentiary harpoon because: (1) it was not voluntary, but was in direct response to a question by the prosecutor and was, in turn, prompted by defense counsel's cross-examination; (2) it was not specifically calculated by the prosecutrix to prejudice the appellant but, rather, was in explanation of her conduct; and (3) due to the overwhelming evidence of guilt it did not, in fact, prejudice the appellant. Therefore, this Court concludes that the appellant's argument is groundless.

### IV

This Court will next consider the sufficiency of the evidence to support the conviction. The appellant asserts the only evidence supporting the charge was the testimony of the prosecutrix.

Both parties cite *Bryant v. State*, Okl.Cr., 478 P.2d 907 (1971), which reaffirms our holding that a conviction for rape may be had on the uncorroborated testimony of the prosecutrix, or on slight corroboration, where the testimony of the prosecutrix is not inherently improbable or unworthy of credence. That rule has been limited to the extent that this Court will carefully examine the record to see that the evidence of the prosecutrix is clear and convincing and is not inconsistent, incredible, or contradictory.

More recently, in *Gamble v. State*, Okl. Cr., 576 P.2d 1184 (1978), we said:

" . . . As was stated in *McComas v. State*, 75 Okl.Cr. 321, 131 P.2d 488 (1942), to authorize reversal of a conviction for rape on the grounds that the evidence is too inherently improbable to support a conviction, the improbability of the prosecutrix' testimony must arise from something other than just the question of her believability. The testimony must be of such contradictory and unsatisfactory nature, or the witness must be so thoroughly impeached, that the reviewing court must say that such testimony is clearly unworthy of belief and insufficient as a matter of law to sustain a conviction. . . . "

■ Here, the prosecutrix was not the only prosecution witness to the events in the Cadillac. The boyfriend testified that he looked back and saw "those two guys take her back to the silver Cadillac." The appellant was also identified by the accomplice, Sammy Graves, who was granted immunity from prosecution. Graves testified he saw the appellant chase the prosecutrix and grab her when she and her boyfriend ran toward the interstate. His testimony also reflects that the appellant led the prosecutrix into the shack and stayed inside for about five minutes.

■ In addition, the appellant was linked to the alleged crime by the highway patrol trooper who shined a floodlight on the area. While this may be slight corroboration, the essential and material facts contained in the prosecutrix' testimony are not inherently improbable or unworthy of credence. We hold her testimony was sufficiently clear and convincing to be of probative value. And because it is within the exclusive province of the jury to weigh the evidence and determine the facts, where the verdict is supported by probable testimony this Court will not interfere with the verdict. *Bryant v. State*, supra.

### V

■ The appellant next attacks the information and the trial court's instructions,

4. See *Titsworth v. State*, Okl.Cr., 368 P.2d 526 (1962); *Payne v. State*, Okl.Cr., 403 P.2d 791 (1965); *Riddle v. State*, Okl.Cr., 373 P.2d 832 (1962); and *Mathis v. State*, Okl.Cr., 553 P.2d 525 (1976).

alleging he was denied due process of law and may have been convicted under a nonunanimous verdict. In the information, the appellant was charged with Rape in the First Degree under conjunctive theories: (1) that the prosecutrix was under the age of sixteen *and* (2) that the act occurred by means of force, overcoming her resistance *and* (3) by means of threats of immediate injury and great bodily harm, accompanied by apparent power of execution.

It is conceivable, the appellant maintains, that the jury could have found him guilty without unanimously finding him guilty of each and every element necessary to the crime beyond a reasonable doubt. This argument stems from the trial court's instructions, numbers three and four, on theories of guilt set forth in the disjunctive. We observe that these instructions parallel the language of the applicable statutes, 21 O.S. 1971, § 1111, defining rape, and 21 O.S.1971, § 1114, defining rape in the first degree and second degree—statutes written in the disjunctive and containing almost identical language as found in the information.

In *Tolleson v. State*, Okl.Cr., 400 P.2d 576 (1965), we set forth the test for construing an indictment or information:

> "[T]his court has uniformly held that the gist of the sufficiency of an indictment or information is not whether it might possibly be made more certain, but whether it alleges every element of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet."

We think the information before us clearly and sufficiently put the appellant on notice of the crime with which he was charged and was not misleading. See also *Williams v. State*, Okl.Cr., 579 P.2d 194 (1978); *Groom v. State*, Okl.Cr., 419 P.2d 286 (1966).

Under similar facts in *Huckleberry v. State*, 64 Okl.Cr. 396, 81 P.2d 493 (1938), this Court found that only a single crime was charged which could be accomplished in different ways and further stated that the language following the conjunction *and* in the information might be considered as surplusage. Citing with apparent approval the third Syllabus in *Short v. State*, 42 Okl.Cr. 437, 276 P. 703 (1929), this Court said:

> " 'Where an information alleges an act of sexual intercourse accomplished with a female under the age of 16 years by force and violence overcoming her resistance *and* by threats of immediate and great bodily harm, accompanied by apparent power of execution, such allegation constitutes a charge of rape in the first degree. The state may establish such charge by proof that the female was under the age of 16 years, *or* that the act of sexual intercourse was accomplished by force and violence overcoming the resistance of the female, *or* by threats of immediate and great bodily harm which prevented her resistance; *the proof of either or both of such conditions is sufficient to establish rape in the first degree.*' " (Emphasis added)

We, therefore, find the appellant's fifth assignment of error to be without foundation.

### VI

 We deem unnecessary an extensive discussion in considering the appellant's last proposition that the prosecution's closing arguments were improper and highly prejudicial. This Court has carefully read the State's closing arguments. No objection was raised at trial to any of these allegedly improper remarks. On each occasion, the appellant failed to properly preserve the same by objecting and requesting that the jury be instructed to disregard the remark. This Court has consistently held that when this is not done the appellant is deemed to have waived any objection, unless the remarks are fundamentally prejudicial. That is not the case here. See *Shelton v. State*, Okl.Cr., 583 P.2d 1107 (1978).

For the above and foregoing reasons, the judgment and sentence is *AFFIRMED*.

BRETT and BUSSEY, JJ., concurs.