Charles Earl SELMON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–79–265.

Court of Criminal Appeals of Oklahoma.

Aug. 13, 1981.

Rehearing Denied Sept. 8, 1981.

Allen B. Mitchell, Thompson & Mitchell, Sapulpa, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Charles Earl Selmon, hereinafter referred to as the defendant, was charged, tried by a jury, and convicted in the District Court of Creek County, Case No. CRF–76–152, for the offense of Larceny of Domestic Animals, in violation of 4 O.S.1971, § 85.1 *et seq.,* and 21 O.S.1971, § 1716. Punishment was set at three (3) years' imprisonment in the Department of Corrections, with the last year suspended, and the defendant appeals.

The State's evidence indicated that on Saturday, September 18, 1976, Glendell Gaskins, the complaining witness, left his farm to visit his father at a Tulsa hospital. Upon his return the next day, he discovered that some cattle were missing from his pasture. He also noticed a mother cow bawling, looking for her calf. Gaskins turned the mother cow loose, and the animal led him across several farms to property leased by the defendant and one Irving Cole. Once he got to the property, Gaskins discovered horse and tire tracks indicating that several cattle had been roped and loaded into trailers from that location. He contacted Deputy Sheriff Stephens and Don Gokeen, the Director of Theft Investigation for the Oklahoma Cattlemen's Association, and reported the animals missing. Upon investi-

gation, it was discovered that six (6) of the missing cattle were sold on September 20, 1976, at the Tulsa Livestock Commission Company, and that a check for the sale had been made payable to "Mike Fisher" in the sum of Six Hundred Ninety-Three and 27/100 Dollars ($693.27). The State also presented testimony of three (3) witnesses, who admitted roping the cows for Fifteen Dollars ($15.00) per head. They testified that they brought two trailers for loading purposes, and that it was the defendant who had employed them and led them to the animals.

Taking the stand in his own defense, the defendant testified that he and Irving Cole were partners in the farming business, and that they had suffered losses for two consecutive years because stray cattle came onto their land and ate their crops. He never reported the matter to the police, nor did he investigate ownership of the cattle. He admitted that he and Irving Code paid for six of the animals to be put in a trailer. He also admitted selling them in Tulsa under the name of "Mike Fisher," because he did not want his bank to know about the transaction. The only significant difference between the defendant's testimony and the State's case, and indeed the only defense offered, is the defendant's insistence that he had no intention of keeping the proceeds of the sale for his own use.

I

The first assignment of error which we will address is the defendant's assertion that the State failed to prove his intent to steal the animals. In our view, the error alleged is without merit.

In *Lemmon v. State*, 538 P.2d 596 (Okl.Cr.1975), we sustained a conviction for larceny of domestic animals where evidence of missing animals was supplemented with substantial facts tending to negate the idea that the defendant had obtained the animals in an honest manner. Again, in *Bellows v. State*, 545 P.2d 1303 (Okl.Cr.1976), another case involving larceny of domestic animals, we held that intent may be inferred from the commission of the crime itself and the absence of evidence to the contrary. The undisputed core of the evidence, as admitted by the defendant, is that he rounded up and sold animals belonging to someone else. His failure to inform the police, his refusal to inquire about the ownership of the animals, and the haste with which the operation was executed, give the appearance of stealth and subterfuge, contrary to the provisions of 4 O.S.1971, § 85.1 *et seq.*, which prescribe the exact procedure for disposing of stray animals.[1] The convergence of these facts are sufficient to

1. Title 4 O.S.1971 § 85.1 *et seq.*, in pertinent part, states:

§ 85.2 Any domestic animal found running at large upon public or private lands in the State of Oklahoma, whose owner is unknown in the vicinity of the premises where found, shall be known as an 'estray,' and it shall be unlawful for any person, company or corporation or either of their employees or agents to take up an estray and retain possession of same, except as provided in this act.

§ 85.3 Any land owner or lessee of land may take up any domestic animal that strays upon his premises or any public thoroughfare adjoining the same. When any person shall take up any stray animal, he shall make a reasonable investigation immediately to ascertain the owner of such animal and, within seven (7) days, he shall report such taking up to the county sheriff of the county in which the animal was taken up, giving a description of the animal, setting forth the brand, sex, and approximate age of such animal. When

the identity of the owner of any stray animal is known to the taker-up he shall communicate to the said owner that the animal has strayed and that he has taken it up. The taker-up may require the owner of any strayed animal he has taken up to pay the actual cost of its keep while so taken up plus all damages that the strayed animal caused to the premises. When one who has taken up a strayed animal is unable, after investigation, to ascertain by whom the animal is owned, or when an owner of a strayed animal is identified and known to be such but neglects or fails to pay the cost of the animal's keep while taken up plus all damages it caused to the premises of the taker-up and remove the animal from the possession of the taker-up the latter shall report all facts relative to the matter to the sheriff of the county in which the animal was taken up.
Laws 1974; ch. 29, § 2, amended by Laws 1980, ch. 161, § 1, now 4 O.S.Supp.1980, § 85.3.

§ 85.4 Upon taking up an estray animal or animals, and after sending a description to

meet the standards articulated in *Lemmon* and *Bellows*. Taken together, they provide ample support for the verdict of the jury.

## II

▉ The defendant next complains about questions raised in the trial regarding the role of his partner, Irving Cole. Specifically, he asserts that it was error to interject Cole's name into the proceedings, since Cole was not a defendant in the case. Such action, the defendant contends, could only be calculated to prejudice the jury. We disagree.

The alleged remarks referred to the following: the partnership between the men; the fact that both men may have taken the law into their own hands in the past; the fact that Irving Cole paid one-half of the cost of roping and loading the animals; and, whether or not Cole received any cattle as a result of the venture. We find that the actions of the defendant, his friends and his partner, were so interwoven on the day in question, that evidence of Cole's activities were essential for the jury to understand exactly what had transpired. It was the defendant himself who first brought up the name of Irving Cole as being his business partner. The defendant also said that it was Cole who suggested rounding up the animals. Having denied that he had the requisite intent to steal the animals, and having built up his defense around his relationship with Irving Cole, the defendant cannot now complain about questions raised regarding Cole. *See, Burnery v. State*, 594 P.2d 1226 (Okl.Cr.1979); *Boling v. State*, 589 P.2d 1089 (Okl.Cr.1979). Indeed, such questions were consistent with the defense theory regarding the events on the day in question. Further, the defendant's conduct was so closely related to that of his partner, that Cole's whereabouts and actions were highly probative in establishing the State's theory as to what happened.

In light of the defendant's own testimony, and in view of the uncontroverted nexus between the conduct of both men, we hold the evidence admissible as tending to help the jury understand the entire transaction. *See, Bruner v. State*, 612 P.2d 1375 (Okl.Cr. 1980). Moreover, in Instruction No. 8,[2] the

the county sheriff and the Division, the taker-up shall be entitled to hold the same lawfully until relieved of its custody by an authorized investigator of the Division. Should a claimant for said animal apply to the taker-up for possession of this animal, the taker-up shall at once notify the Division, and should the Division investigator be satisfied that said applicant is the rightful owner, he shall issue an order authorizing the taker-up to deliver the estray to the rightful owner, who shall be required to pay to the taker-up the actual cost for keeping the estray, together with the actual amount of any damages suffered by the taker-up as a result of the estray being upon his premises.
This section has since been amended. See Laws 1980; ch. 161, § 2, now 4 O.S.Supp.1980, § 85.4.
§ 85.5 ... Upon receipt of report of taking up of any strayed animal, the sheriff shall cause to be published in a newspaper having general circulation in such county in which such strayed animal has been taken up a description of said animal or animals which shall contain sex, age and brand or brands but shall not contain color, or marks or other descriptive information.
Laws 1974; ch. 29, § 3, now 4 O.S.Supp.1980, § 85.5.

§ 85.6 If the sheriff shall be unable to determine the owner or probable owner of such strayed animal or animals from brand records and other reports of lost, strayed and stolen livestock, the animal or animals shall be sold by the sheriff, following no less than a ten day published notice at the nearest approved and licensed or federally inspected livestock auction market from where taken up, inside the State of Oklahoma.....
Laws 1974; ch. 29, § 4, now 4 O.S.Supp.1980, § 85.6.
§ 85.10 Any persons taking up an estray as hereinbefore provided shall feed and care for said estray.
§ 85.11 Penalties ... If any person unlawfully takes up or conceals an estray or fails to comply with the provisions of this act, such person so offending shall be guilty of larceny of domestic animals and shall be punished according to the provisions of Section 1716, Title 21, Oklahoma Statutes.
Laws 1974; ch. 29, § 5, now 4 O.S.Supp.1980, § 85.11.

2. Instruction No. 8 reads as follows:
Certain evidence has been introduced tending to show that the defendant may have committed other and distinct offenses from that charged in the Information. This evidence was not admitted as tending to prove the guilt or

court instructed the jury not to consider evidence of other crimes in reaching its decision. This was a cautionary step designed to guard against the possibility of prejudice to the defendant. The jury's decision of three (3) years' imprisonment, out of a possible ten (10) years suggests to us that the instruction of the court was heeded. This assignment of error is thus without merit, and the judgment and sentence appealed from is hereby AFFIRMED.

CORNISH, J., concurs.

BRETT, P. J., dissents.

innocence of the defendant of the specific offense charged in the Information in this case, but you may, in your discretion, consider the same, as such facts may or may not, in your judgment, affect the weight and credit which you will give to the testimony of the defendant, but for no other purpose. A person may not be convicted of the commission of one offense by any proof tending to show that he may or may not have committed another offense.