NOT DESIGNATED FOR PUBLICATION

No. 119,310

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

JERRY L. ST. JOHN,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DEBORAH HERNANDEZ-MITCHELL, judge. Opinion filed July 26, 2019. Sentence vacated and case remanded with directions.

*Patrick H. Dunn*, of Kanas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., PIERRON and BRUNS, JJ.

PIERRON, J.: St. John pleaded no contest to two counts of criminal sodomy and one count of aggravated indecent liberties with a child. The district court found he was a persistent sex offender because he had a prior conviction for second-degree rape in Oklahoma. The court sentenced him to 214 months' imprisonment, an enhanced sentence based on his status as a persistent sex offender. St. John appeals, arguing the district court erred (1) in classifying him as a persistent sex offender because Oklahoma second-degree rape is not comparable to any sexually violent crime in Kansas; (2) in classifying his Oklahoma second-degree rape conviction as a person felony because the elements are not

identical to, or narrower than, any Kansas crime; (3) by holding it did not have discretion to depart from the persistent sex offender sentencing provision; and (4) in relying on an Oklahoma deferred judgment in determining his criminal history score.

FACTS

In December, 2017, St. John pleaded no contest to two counts of criminal sodomy and one count of aggravated indecent liberties with a child, all severity level 3 person felonies. See K.S.A. 2017 Supp. 21-5504(a)(4); K.S.A. 2017 Supp. 21-5506(b)(1). In exchange for his pleas, the State agreed to recommend the sentences run concurrently. St. John would be free to argue for any other legal sentence.

St. John's presentence investigation (PSI) report showed he had a criminal history score of C and showed he had two prior convictions. One was a 2010 conviction for second-degree burglary from Oklahoma. That conviction was classified as a nonperson felony. The other was a 2011 conviction for second-degree rape, also from Oklahoma. That conviction was classified as a person felony. His PSI report also classified him as a persistent sex offender.

St. John moved for a durational departure. At sentencing, the district court found he had a criminal history score of C. After hearing from both parties, the court found it did not have discretion to depart because St. John qualified as a persistent sex offender. The court added it would have departed if it had the discretion to do so. The court then sentenced St. John to a controlling term of 214 months' imprisonment. St. John appeals.

2

ANALYSIS

*K.S.A. 2017 Supp. 21-6804(j)*

St. John argues the district court erred in classifying him as a persistent sex offender under K.S.A. 2017 Supp. 21-6804(j). That statute defines a persistent sex offender in part as an offender with a prior conviction for a sexually violent crime in Kansas or a comparable out-of-state felony. K.S.A. 2017 Supp. 21-6804(j)(2)(A)(ii). Relying on the Kansas Supreme Court's decision in *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018), St. John argues that a comparable felony under K.S.A. 2017 Supp. 21-6804(j) is one with identical-or-narrower elements to a Kansas sexually violent crime. He contends that some versions of Oklahoma second-degree rape are broader than any sexually violent crime in Kansas, thus his Oklahoma second-degree rape conviction is not a comparable felony and cannot be used to classify him as a persistent sex offender. Because he was incorrectly classified as a persistent sex offender, he argues his sentence is illegal under K.S.A. 2017 Supp. 22-3504(3) because it does not conform to the appropriate statutory provisions.

The State points out that St. John is challenging the legality of his sentence for the first time on appeal. Generally, when a party fails to raise an issue before the district court, it may not raise that issue on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). The State urges us to apply this rule here. But Kansas appellate courts have repeatedly held that a court may correct a sentence at any time, even when a party raises the issue for the first time on appeal. See, e.g., *State v. Dickey*, 301 Kan. 1018, Syl. ¶ 1, 350 P.3d 1054 (2015).

To resolve this issue, we must answer two questions: (1) What is a comparable felony under K.S.A. 2017 Supp. 21-6804(j); and (2) is an Oklahoma second-degree rape

3

conviction comparable to a Kansas sexually violent crime? To answer these questions, we must interpret the Kansas Sentencing Guidelines Act (KSGA). Statutory interpretation is a question of law subject to unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). Likewise, a sentence's legality is a question of law over which we have unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016).

*What Is a Comparable Felony Under K.S.A. 2017 Supp. 21-6804(j)?*

K.S.A. 2017 Supp. 21-6804 is part of the revised KSGA and provides the sentencing guidelines grid for nondrug crimes. That grid defines the presumptive sentence for felony convictions based on the crime's severity level and the offender's criminal history score. K.S.A. 2017 Supp. 21-6804(c) and (d). That statute also contains a special sentencing provision for persistent sex offenders and requires district courts to sentence persistent sex offenders to double the maximum presumptive prison term for the offender's crime of conviction. K.S.A. 2017 Supp. 21-6804(j)(1).

A persistent sex offender is a person who:

"(A)(i) Has been convicted in this state of a sexually violent crime, as defined in K.S.A. 22-3717, and amendments thereto; and

"(ii) at the time of the conviction under subsection (j)(2)(A)(i) has at least one conviction for a sexually violent crime, as defined in K.S.A. 22-3717, and amendments thereto, in this state or comparable felony under the laws of another state, the federal government or a foreign government; or

"(B)(i) has been convicted of rape, as defined in K.S.A. 21-3502, prior to its repeal, or K.S.A. 2017 Supp. 21-5503, and amendments thereto; and

"(ii) at the time of the conviction under subsection (j)(2)(B)(i) has at least one conviction for rape in this state or comparable felony under the laws of another state, the federal government or a foreign government." K.S.A. 2017 Supp. 21-6804(j)(2).

4

So whether an offender qualifies as a persistent sex offender depends on two factors—the offender's current conviction and the offender's criminal history. St. John's current convictions are for criminal sodomy and aggravated indecent liberties with a child. Both crimes are sexually violent crimes under K.S.A. 2017 Supp. 22-3717(d)(5). Because St. John's current convictions are sexually violent crimes, he would have to have at least one prior conviction for a sexually violent crime or a comparable out-of-state felony to qualify as a persistent sex offender. K.S.A. 2017 Supp. 21-6804(j)(2)(A)(ii).

St. John has a prior conviction for second-degree rape from Oklahoma. Oklahoma classifies second-degree rape as a felony. Okla. Stat. Ann. Tit. 21, § 1116. But whether this conviction qualifies him as a persistent sex offender depends on the requirement for comparability under K.S.A. 2017 Supp. 21-6804(j)(2)(A)(ii).

The court in *State v. Riolo*, 50 Kan. App. 2d 351, 330 P.3d 1120 (2014), addressed this issue. Riolo challenged his classification as a persistent sex offender based on a prior Colorado conviction for sexual assault on a child. He argued that differences between the elements of sexual assault on a child in Colorado and indecent liberties with a child in Kansas meant his Colorado conviction was not comparable to any Kansas offense. The *Riolo* court rejected his argument, holding that under the persistent sex offender sentencing provision, the elements of the comparable Kansas offense need not be identical to the out-of-state crime as long as the statutes were similar in nature and in the conduct they prohibited. 50 Kan. App. 2d at 356-57.

In reaching this conclusion, the *Riolo* court relied on previous caselaw interpreting the meaning of "comparable" in K.S.A. 21-4711(e) (later recodified as K.S.A. 21-6811[e]). 50 Kan. App. 2d at 353 (citing *State v. Barajas*, 43 Kan. App. 2d 639, 643, 230 P.3d 784 [2010]). That statute requires an offender's prior out-of-state convictions to be classified as either a person or nonperson crime for calculating the offender's criminal

5

history score. In determining whether an out-of-state conviction is a person or nonperson crime, "comparable offenses under the Kansas criminal code in effect on the date of the current crime of conviction shall be referred to." K.S.A. 2017 Supp. 21-6811(e)(3). When *Riolo* was decided, Kansas caselaw held that under subsection (e), "[a] comparable offense need not contain elements identical to those of the out-of-state crime . . . but must be similar in nature and cover a similar type of criminal conduct. [Citation omitted.] " *Barajas*, 43 Kan. App. 2d at 643; see also *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003), *overruled on other grounds by State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015) (holding "[f]or purposes of determining criminal history, the offenses need only be comparable, not identical").

But since *Riolo*, the Kansas Supreme Court has re-examined the statutory requirement for comparability under K.S.A. 2017 Supp. 21-6811(e)(3). In *Wetrich*, the defendant challenged the classification of his prior Missouri burglary conviction as a person felony for purposes of calculating his criminal history score. The *Wetrich* court declined to resolve this issue on constitutional grounds and relied instead on statutory interpretation. The court first sought to determine the plain language of K.S.A. 2017 Supp. 21-6811(e)(3). But after looking at both dictionary and thesaurus definitions of comparable, the court determined that the plain language was unclear. 307 Kan. at 559-60.

Because the statute's language was unclear, the *Wetrich* court turned to legislative history. The court recognized that the KSGA represented a significant change in sentencing laws. The Kansas Legislature had several stated principles behind this change, including: "Sanctions should be uniform and not related to socioeconomic factors, race, or geographic location." 307 Kan. at 560. In line with this principle, the court determined:

> "For an out-of-state conviction to be comparable to an offense under the Kansas criminal code, the elements of the out-of-state crime cannot be broader than the elements of the

6

> Kansas crime. In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." 307 Kan. at 562.

The State argues that *Riolo* is the controlling case on the meaning of comparable in K.S.A. 2017 Supp. 21-6811(e). But *Riolo* based its decision on prior caselaw interpreting the meaning of comparable in K.S.A. 2017 Supp. 21-6811(e). The Kansas Supreme Court has since re-examined the meaning of comparable in K.S.A. 2017 Supp. 21-6811(e). It follows then that the meaning of comparable in K.S.A. 2017 Supp. 21-6804(j) should follow suit.

The State argues that *Wetrich* does not apply here for several more reasons: it was wrongly decided because the commonly understood meaning of comparable is "similar" and not "identical"; it interpreted a different statute; and K.S.A. 21-4704(j) (now K.S.A. 2017 Supp. 21-6804[j]) is a special sentencing provision first passed in 1996, three years after the Kansas Legislature enacted the KSGA. See L. 1996, ch. 258, § 10.

The State's arguments are not persuasive given the controlling caselaw. We are duty bound to follow *Wetrich* absent some indication our Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). No such indication exists here. While *Wetrich* interpreted a different statute, both statutes are part of the KSGA, and courts must construe statutes *in pari materia* and bring the provisions into a workable harmony. *State v. Keel*, 302 Kan. 560, Syl. ¶ 7, 357 P.3d 251 (2015). Finally, while K.S.A. 21-4704(j) was enacted in 1996, there is no reason to think the Kansas Legislature abandoned the principles behind the KSGA in those three years.

The State also argues that *Wetrich* does not apply because of a 2017 amendment to K.S.A. 2017 Supp. 22-3504(3) that states: "A sentence is not an 'illegal sentence' because

7

of a change in the law that occurs after the sentence is pronounced." The State says *Wetrich* was a change in the law after St. John's sentencing, so the new identical or narrower rule does not apply to his sentence. The State is correct that *Wetrich* is a change in law. See *State v. Weber*, 309 Kan. ___, 442 P.3d 1044, 1049 (2019).

Even so, St. John still receives any benefit of that change. As St. John points out, this is his direct appeal, not a motion to correct an illegal sentence. In *State v. Murdock*, 309 Kan. 585, 591, 439 P.3d 307 (2019), the Kansas Supreme Court held that "a party may seek and obtain the benefit of a change in the law during the pendency of a direct appeal, but a party moving to correct an illegal sentence is stuck with the law in effect at the time the sentence was pronounced." See L. 2019, ch. 59, § 15 ("'Change in the law' means a statutory change or an opinion by an appellate court of the state of Kansas, unless the opinion is issued while the sentence is pending an appeal from the judgment of conviction.")

Adopting the rationale of *Wetrich*, we find that for an out-of-state felony to be comparable to a sexually violent crime in Kansas under K.S.A. 21-6804(j), the elements of the out-of-state crime must be identical to, or narrower than, the Kansas crime.

*Is Oklahoma Second-Degree Rape Comparable to Any Sexually Violent Crime in Kansas?*

Having determined the statutory requirement of comparability under K.S.A. 2017 Supp. 21-6804(j), we must next determine if an Oklahoma second-degree rape conviction is comparable to a Kansas sexually violent crime as defined in K.S.A. 2017 Supp. 22-3717(d)(5).

In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the United States Supreme Court held: "Other than the fact of a prior conviction,

any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In *Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), the Court set out an analysis for determining whether a prior conviction could be used to enhance a sentence without violating *Apprendi*. If the prior conviction was for violating a statute with a single set of elements, a sentencing court may look only at the statutory definition of a defendant's prior conviction and not the facts underlying the conviction. *Descamps*, 570 U.S. at 261. This is known as the categorical approach. But if the prior conviction was for violating a statute that "sets out one or more elements of the offense in the alternative," a sentencing court may consult a limited class of documents to determine which alternative elements formed the basis of the defendant's prior conviction. 570 U.S. at 257, 261-62. This is known as the modified categorical approach. The Kansas Supreme Court adopted the *Descamps* analysis in *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015).

Later, in *Wetrich*, the Kansas Supreme Court adopted the identical-or-narrower rule for determining how convictions are to be scored as either person or nonperson crimes in Kansas. Both parties appear to believe *Wetrich* eliminated the analysis set out in *Descamps* and adopted in *Dickey*. Because *Wetrich* involved a statute with a single set of elements, it is not clear how *Wetrich*'s identical or narrower rule should apply to a statute with alternative elements. But either way the outcome is the same: Oklahoma second-degree rape covers a broader range of conduct than any sexually violent crime in Kansas. Because the alternative ways a defendant can commit Oklahoma second-degree rape are likely means and not elements, the statutes are indivisible. As a result, Oklahoma second-degree rape is not a comparable out-of-state felony under K.S.A. 2017 Supp. 21-6804(j).

*Oklahoma Second-Degree Rape*

St. John argues that the elements of Oklahoma second-degree rape are broader than any sexually violent crime in Kansas. At the time of St. John's prior conviction, three statutes defined the crime of rape in Oklahoma. Okla. Stat. tit. 21, § 1111 (2011), generally defined the elements of rape:

"A. Rape is an act of sexual intercourse involving vaginal or anal penetration accomplished with a male or female who is not the spouse of the perpetrator and who may be of the same or the opposite sex as the perpetrator under any of the following circumstances:

"1. Where the victim is under sixteen (16) years of age;

"2. Where the victim is incapable through mental illness or any other unsoundness of mind, whether temporary or permanent, of giving legal consent;

"3. Where force or violence is used or threatened, accompanied by apparent power of execution to the victim or to another person;

"4. Where the victim is intoxicated by a narcotic or anesthetic agent, administered by or with the privity of the accused as a means of forcing the victim to submit;

"5. Where the victim is at the time unconscious of the nature of the act and this fact is known to the accused;

"6. Where the victim submits to sexual intercourse under the belief that the person committing the act is a spouse, and this belief is induced by artifice, pretense, or concealment practiced by the accused or by the accused in collusion with the spouse with intent to induce that belief. In all cases of collusion between the accused and the spouse to accomplish such act, both the spouse and the accused, upon conviction, shall be deemed guilty of rape;

"7. Where the victim is under the legal custody or supervision of a state agency, a federal agency, a county, a municipality or a political subdivision and engages in sexual intercourse with a state, federal, county, municipal or political subdivision employee or an employee of a contractor of the state, the federal government, a county, a municipality or a political subdivision that exercises authority over the victim; or

"8. Where the victim is at least sixteen (16) years of age and is less than twenty (20) years of age and is a student, or under the legal custody or supervision of any public or private

10

elementary or secondary school, junior high or high school, or public vocational school, and engages in sexual intercourse with a person who is eighteen (18) years of age or older and is an employee of the same school system.

"B. Rape is an act of sexual intercourse accomplished with a male or female who is the spouse of the perpetrator if force or violence is used or threatened, accompanied by apparent power of execution to the victim or to another person."

Oklahoma does not define sexual intercourse by statute. But the Oklahoma Uniform Jury Instructions provide: "Sexual intercourse is the actual penetration of the vagina/anus by the penis." OUJI-CR 4-122 (2018); see also *Miller v. State*, 82 P.2d 317, 322 (Okla. Crim. App. 1938) (holding sexual intercourse requires "proof to some degree of entrance of the male organ, that is, it must be shown that the private parts of the male entered at least to some extent those of the female").

Okla. Stat. tit. 21, § 1111.1 (2011), defined the elements of rape by instrumentation:

"Rape by instrumentation is an act within or without the bonds of matrimony in which any inanimate object or any part of the human body, not amounting to sexual intercourse is used in the carnal knowledge of another person without his or her consent and penetration of the anus or vagina occurs to that person. Provided, further, that at least one of the circumstances specified in Section 1111 of this title has been met; further, where the victim is at least sixteen (16) years of age and is less than twenty (20) years of age and is a student, or under the legal custody or supervision of any public or private elementary or secondary school, junior high or high school, or public vocational school, and engages in conduct prohibited by this section of law with a person who is eighteen (18) years of age or older and is an employee of the same school system, or where the victim is under the legal custody or supervision of a state or federal agency, county, municipal or a political subdivision and engages in conduct prohibited by this section of law with a federal, state, county, municipal or political subdivision employee or an employee of a contractor of the state, the federal government, a county, a municipality or

11

a political subdivision that exercises authority over the victim, consent shall not be an element of the crime."

Okla. Stat. tit. 21, § 1114 (2011), differentiated first and second-degree rape:

"A. Rape in the first degree shall include:
"1. rape committed by a person over eighteen (18) years of age upon a person under fourteen (14) years of age; or
"2. rape committed upon a person incapable through mental illness or any unsoundness of mind of giving legal consent regardless of the age of the person committing the crime; or
"3. rape accomplished where the victim is intoxicated by a narcotic or anesthetic agent, administered by or with the privity of the accused as a means of forcing the victim to submit; or
"4. rape accomplished where the victim is at the time unconscious of the nature of the act and this fact is known to the accused;
"5. rape accomplished with any person by means of force, violence, or threats of force or violence accompanied by apparent power of execution regardless of the age of the person committing the crime; or
"6. rape by instrumentation resulting in bodily harm is rape by instrumentation in the first degree regardless of the age of the person committing the crime; or
"7. rape by instrumentation committed upon a person under fourteen (14) years of age.
"B. In all other cases, rape or rape by instrumentation is rape in the second degree."

Looking at these statutes, Oklahoma law has defined at least 12 ways to commit second-degree rape:

1. Penile penetration of the anus or vagina of a victim who is not the offender's spouse when the victim is under 16 years old.

2. Penile penetration of the anus or vagina of a victim who is not the offender's spouse when "the victim submits to sexual intercourse under the

12

belief that the person committing the act is a spouse, and this belief is induced by artifice, pretense, or concealment practiced by the accused or by the accused in collusion with the spouse with intent to induce that belief."

3. Penile penetration of the anus or vagina of a victim who is not the offender's spouse when "the victim is under the legal custody or supervision of a state agency, a federal agency, a county, a municipality or a political subdivision and engages in sexual intercourse with a state, federal, county, municipal or political subdivision employee or an employee of a contractor of the state, the federal government, a county, a municipality or a political subdivision that exercises authority over the victim, or the subcontractor or employee of a subcontractor of the contractor of the state or federal government, a county, a municipality or a political subdivision that exercises authority over the victim."

4. Penile penetration of the anus or vagina of a victim who is not the offender's spouse when "the victim is at least sixteen (16) years of age and is less than twenty (20) years of age and is a student, or under the legal custody or supervision of any public or private elementary or secondary school, junior high or high school, or public vocational school, and engages in sexual intercourse with a person who is eighteen (18) years of age or older and is an employee of the same school system."

5. Nonconsensual penetration of the anus or vagina by any non-penile object when the victim is sixteen (16) years of age.

6. Nonconsensual penetration of the anus or vagina by any non-penile object when the victim is incapable through mental illness or any other

13

unsoundness of mind, whether temporary or permanent, of giving legal consent.

7. Nonconsensual penetration of the anus or vagina by any non-penile object when force or violence is used or threatened, accompanied by apparent power of execution to the victim or to another person.

8. Nonconsensual penetration of the anus or vagina by any non-penile object when the victim is intoxicated by a narcotic or anesthetic agent, administered by or with the privity of the accused as a means of forcing the victim to submit.

9. Nonconsensual penetration of the anus or vagina by any non-penile object when the victim is at the time unconscious of the nature of the act and this fact is known to the accused.

10. Nonconsensual penetration of the anus or vagina by any non-penile object when the victim submits to sexual intercourse under the belief that the person committing the act is a spouse, and this belief is induced by artifice, pretense, or concealment practiced by the accused or by the accused in collusion with the spouse with intent to induce that belief. In all cases of collusion between the accused and the spouse to accomplish such act, both the spouse and the accused, upon conviction, shall be deemed guilty of rape.

11. Penetration of the anus or vagina by any non-penile object, regardless of consent, the victim is at least sixteen (16) years of age and is less than twenty (20) years of age and is a student, or under the legal custody or supervision of any public or private elementary or secondary school, junior

high or high school, or public vocational school, and engages in conduct prohibited by this section of law with a person who is eighteen (18) years of age or older and is an employee of the same school system.

12. Penetration of the anus or vagina by any non-penile object, regardless of consent, the victim is under the legal custody or supervision of a state or federal agency, county, municipal or a political subdivision and engages in conduct prohibited by this section of law with a federal, state, county, municipal or political subdivision employee or an employee of a contractor of the state, the federal government, a county, a municipality or a political subdivision that exercises authority over the victim.

*Kansas Sexually Violent Crimes*

St. John committed his current offense in July 2017. At the time, K.S.A. 2017 Supp. 22-3717(d)(5), identified following crimes as sexually violent crimes:

1. Rape under K.S.A. 2017 Supp. 21-5503;
2. Indecent liberties with a child and aggravated indecent liberties with a child under K.S.A. 2017 Supp. 21-5506(a) and (b);
3. Criminal sodomy and aggravated criminal sodomy under K.S.A. 2017 Supp. 21-5504(a)(3), (a)(4), and (b);
4. Indecent solicitation of a child and aggravated indecent solicitation of a child under K.S.A. 2017 Supp. 21-5508(a) and (b);
5. Sexual exploitation of a child under K.S.A. 2017 Supp. 21-5510;
6. Aggravated sexual battery under K.S.A. 2017 Supp. 21-5505(b);

7. Aggravated incest under K.S.A. 2017 Supp. 21-5604(b);

15

8.  Aggravated human trafficking under K.S.A. 2017 Supp. 21-5426(b), if committed in whole or in part for the sexual gratification of the defendant or another;

9.  Internet trading in child pornography or aggravated internet trading in child pornography under K.S.A. 2017 Supp. 21-5514(a) and (b); and

10. Commercial sexual exploitation of child under K.S.A. 2017 Supp. 21-6422.

11. Attempt, conspiracy, or criminal solicitation defined in K.S.A. 2017 Supp. 21-5301, 21-5302, or 21-5303, of a sexually violent crime defined above.

*Comparability Without Using* Descamps/Dickey *Analysis*

If we determine the *Descamps*/*Dickey* analysis no longer applies after *Wetrich*, then the district court erred in finding St. John was a persistent sex offender because Oklahoma second-degree rape covers a broader range of conduct than the sexually violent crimes listed in K.S.A. 2017 Supp. 22-3717(d)(5). For example, Oklahoma second-degree rape would include sexual intercourse between an employee of a school system who is 18 years old or older and a student of that same school system who is between 16 and 20 years old. But the closest Kansas crime covering this conduct would be unlawful sexual relations under K.S.A. 2017 Supp. 21-5512(a)(9), which is not a sexually violent crime. In addition, at least one way of committing Oklahoma second-degree rape does not appear to be a crime in Kansas at all—when the victim submits to sexual intercourse under the fraudulently induced belief that the person committing the act is a spouse. Because the elements of Oklahoma second-degree rape are not identical to, or narrower than, any sexually violent crime in Kansas, it is not a comparable felony under K.S.A. 2017 Supp. 21-6804(j).

*Comparability Using* Descamps/Dickey *Analysis*

If we decide the *Descamps*/*Dickey* analysis still applies, then we follow a different path to the same destination. In *Mathis v. United States*, 579 U.S. __, 136 S. Ct. 2243,

16

2249, 195 L. Ed. 2d 604 (2016), the United States Supreme Court clarified that the modified categorical approach applies only to statutes that list "multiple elements disjunctively" and thus "define multiple crimes." It does not apply to statutes that list "various factual means of committing a single element." 136 S. Ct. at 2249. For example, if "a statute requires the use of a 'deadly weapon' as an element of a crime and further provides that the use of a 'knife, gun, bat, or similar weapon' would all qualify," use of the modified categorical approach would be inappropriate because that statute "merely specifies diverse means of satisfying a single element of a single crime." 136 S. Ct. at 2249. So "[t]he first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means." 136 S. Ct. at 2256.

The *Mathis* Court proposed several ways a sentencing court could determine whether a statute lists alternative means or alternative elements. First, a sentencing court may look to a state court decision that holds that a set of statutory alternatives are means or elements. Next, a court may look to see if statutory alternatives carry different punishments. If so, they are elements and not means. Third, a court may determine if a statute lists "illustrative examples," in which case the alternatives are means. Finally, the statute may state which things the State must charge, making them elements, and which things the State need not charge, making them means. 136 S. Ct. at 2256.

In *Mathis*, the Court determined that Iowa's burglary law listed alternative means, instead of elements, based on state caselaw. The Iowa Supreme Court had held that the listed premises in the state's burglary law were "'alternative method[s]' of committing one offense, so that a jury need not agree" on the burgled location. 136 S. Ct. at 2256 (quoting *State v. Duncan*, 312 N.W.2d 519, 523 [Iowa 1981]). According to *Mathis*, "when a [state court] ruling of that kind exists," it "definitively" establishes that the statutory alternatives are means instead of elements. 136 S. Ct. at 2256.

17

Oklahoma appears to have just that kind of ruling. In *Bruner v. State*, 612 P.2d 1375 (Okla. Crim. App. 1980), the defendant was charged with first degree rape under several theories including: (1) the victim was under the age of sixteen; (2) that the defendant used force to overcome the victim's resistance; and (3) that the defendant used threats of immediate injury or great bodily harm, along with the apparent ability to carry out those threats. The jury instructions in his case also set out the theories of guilt disjunctively. On appeal, the defendant challenged his conviction, arguing that "he was denied due process of law and may have been convicted under a nonunanimous verdict." 612 P.2d at 1380. He asserted "[i]t was conceivable . . . that the jury could have found him guilty without unanimously finding him guilty of each and every element necessary to the crime beyond a reasonable doubt" because of the way the jury instructions were drafted. 612 P.2d at 1380.

The *Bruner* court rejected both the defendant's due process and jury-unanimity arguments. The court held that first degree rape was "only a single crime . . . which could be accomplished in different ways." 612 P.2d at 1380. When the State charges a defendant with first degree rape under several theories of guilt, proof of either or all the theories would support a conviction. 612 P.2d at 1380.

Like the Iowa state court decision discussed in *Mathis*, the Oklahoma Court of Criminal Appeals has held that the statutory alternatives for first degree rape are different ways of committing one crime, and a jury need not unanimously agree on any one of these alternatives to convict. While *Bruner* addressed first-degree rape, there is no reason to believe Oklahoma courts would treat second-degree rape any differently, as both crimes are defined in the same statutes. Thus, the many ways to commit second-degree rape in Oklahoma are means and not elements. See also, *United States v. Degeare*, 884 F.3d 1241, 1258 (10th Cir. 2018) (finding Oklahoma's forcible-sodomy statute was not necessarily divisible based in part on *Bruner*).

18

On the other hand, Oklahoma jury instructions refer to the alternative ways of committing rape as elements, not means. For example, the current jury instruction for second-degree rape not by instrumentation states:

"No person may be convicted of rape in the second degree unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

"First, sexual intercourse;

"Second, with a person who is not the spouse of the defendant [and who may be of the same sex as the defendant];

"[Third, where the victim was under the age of sixteen].

"OR

"[Third, where the victim was under the belief induced by the defendant that the victim was having intercourse with his/her spouse].

"OR

"[Third, where the victim was under the legal custody/supervision;

"Fourth, of a (state/federal agency)/county/municipality/(political subdivision); and

"Fifth, the defendant was an employee/(employee of a contractor of)/the (state/federal agency)/county/municipality/(political subdivision) that exercised authority over the victim;].

"OR

"[Third, where the victim was between sixteen and twenty years of age;

"Fourth, the victim was a student/(under the legal custody/supervision) of a/an (elementary/secondary school)/(junior high)/high/(public vocational) school;

"Fifth, the defendant was eighteen years of age or older; and

"Sixth, the defendant was an employee of the victim's school system]. OUJI CR 4-124 (2018).

The Notes on Use for this instruction also provide, "The trial court should read the bracketed language in the second element only if the defendant was of the same sex as the victim. In the third element the trial court should read only the alternative (or alternatives) that is (or are) supported by the evidence." OUJI CR 4-124, notes on use.

19

The Tenth Circuit rejected a similar argument in *Degeare*. There, the defendant argued that the various ways of committing forcible sodomy in Oklahoma were elements and not means. In support of this argument, he highlighted Oklahoma's use of the word "elements" in the jury instruction on forcible oral sodomy. But the Tenth Circuit rejected his argument, concluding "simply calling a statutory alternative an element doesn't make it so. . . . This much is clear from the fact that the 'Notes on Use' following Oklahoma's first-degree-rape instruction likewise refer to § 1111's alternatives—alternatives that *Bruner* establishes are actually means, 612 P.2d at 1380—as 'element[s].' [Citation omiited.]" *Degeare*, 884 F.3d at 1255.

Because the above listed ways of committing second-degree rape in Oklahoma are means, instead of elements, the use of the modified categorical approach would be inappropriate here. Because Oklahoma's second-degree rape covers a broader range of conduct than the sexually violent crimes listed in K.S.A. 2017 Supp. 22-3717(d)(5), it is not a comparable out-of-state felony under the persistent sex offender sentencing provision. Thus, the district court erred in classifying St. John as a persistent sex offender.

*Did the District Court Err in Classifying St. John's Prior Oklahoma Rape Conviction as a Person Felony?*

St. John argues the district court erred in classifying his Oklahoma second-degree rape conviction as a person felony. As with the previous issue, this issue involves a question of law subject to unlimited review. *Lee*, 304 Kan. at 417; *Collins*, 303 Kan. at 473-74.

The Kansas sentencing statute requires an offender's prior out-of-state convictions to be classified as either a misdemeanor or felony for calculating the offender's criminal history score. K.S.A. 2017 Supp. 21-6811(e)(2). That statute also requires an offender's

20

out-of-state conviction to be classified as a person or nonperson crime. K.S.A. 2017 Supp. 21-6811(e)(3). In determining whether an out-of-state conviction is a person or nonperson crime, "comparable offenses under the Kansas criminal code in effect on the date of the current crime of conviction shall be referred to." K.S.A. 2017 Supp. 21-6811(e)(3). For an out-of-state conviction to be comparable to a Kansas crime, "the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." *Wetrich*, 307 Kan. at 562.

We acknowledge the Kansas Legislature recently amended K.S.A. 21-6811, effective May 23, 2019. L. 2019, ch. 59, § 13. These amendments change the way of classifying an offender's prior felony conviction as a person crime and eliminate the need to determine if an out-of-state felony is comparable to a Kansas felony. That said, the sentencing provisions in effect at the time a crime is committed are controlling. *State v. McLinn*, 307 Kan. 307, 337, 409 P.3d 1 (2018). Additionally, the Kansas Legislature did not make the 2019 amendments retroactive. Because St. John committed his current crime of conviction in 2017, the version of K.S.A. 21-6811 in effect at that time controls his sentencing.

Oklahoma classifies second-degree rape as a felony. Okla. Stat. Ann. Tit. 21 § 1116. So St. John's conviction is also classified as a felony for purposes of calculating his criminal history score. K.S.A. 2017 Supp. 21-6811(e)(2)(A) ("If a crime is a felony in the convicting jurisdiction, it will be counted as a felony in Kansas.")

But as far as whether Oklahoma second-degree rape classifies as a person felony, the analysis here is much like the last issue. Oklahoma's second-degree rape statute covers a broader range of conduct than any Kansas person felony. The various ways of committing second-degree rape are means and not elements, thus use of the modified categorical approach would be inappropriate. See *Wetrich*, 307 Kan. at 564; *Bruner*, 612 P.2d at 1380. As a result, the district court erred in classifying St. John's Oklahoma

21

second-degree rape conviction as a person felony for calculating his criminal history score.

We admit that classifying rape as a nonperson felony appears to be very odd. However, we must apply the analysis noted above which compels that finding.

Because the district court erred by classifying St. John as a persistent sex offender and by classifying his Oklahoma second-degree rape conviction as a person felony, we must vacate St. John's sentence and remand for resentencing.

*Did the District Court Err in Holding It Did Not Have Discretion to Depart Because St. John Was a Persistent Sex Offender?*

St. John argues the district court erred by holding it did not have discretion to grant a departure because St. John was a persistent sex offender. This issue involves statutory interpretation, which is a question of law subject to unlimited review. *Collins*, 303 Kan. at 473-74.

The sentencing grid set out in K.S.A. 2017 Supp. 21-6804(a) defines presumptive sentences. But under K.S.A. 2017 Supp. 21-6804(d), presumptive sentences are subject to the court's discretion to enter a departure sentence. That statute states:

"The sentencing guidelines grid for nondrug crimes as provided in this section defines presumptive punishments for felony convictions, subject to the sentencing court's discretion to enter a departure sentence. The appropriate punishment for a felony conviction should depend on the severity of the crime of conviction when compared to all other crimes and the offender's criminal history."

St. John points out the court in *State v. Chesbro*, 35 Kan. App. 2d 662, 681, 134 P.3d 1 (2006), has already held that district courts have the discretion to depart when the

22

defendant qualifies as a persistent sex offender. Interpreting K.S.A. 2005 Supp. 21-4704 (later recodified as K.S.A. 2017 Supp. 21-6804), the *Chesbro* court found the persistent sex offender provision simply establishes the presumptive sentence for offenses committed by persons classified as persistent sex offenders. As a result, district courts have the statutory authority to depart from that presumptive sentence. 35 Kan. App. 2d at 680-81.

St. John acknowledges that *Chesbro* interpreted an earlier version of K.S.A. 2017 Supp. 21-6804(d). But as he argues, the recodified version is substantially the same. Compare K.S.A. 2005 Supp. 21-4704(d) ("The sentencing guidelines grid for non-drug crimes as provided in this section defines presumptive punishments for felony convictions, subject to judicial discretion to deviate for substantial and compelling reasons and impose a different sentence in recognition of aggravating and mitigating factors as provided in this act.") with K.S.A. 2017 Supp. 21-6804(d) ("The sentencing guidelines grid for non-drug crimes as provided in this section defines presumptive punishments for felony convictions, subject to the sentencing courts' discretion to enter a departure sentence."). While the Kansas Legislature made some changes to the language in subsection (d), it did not adopt language abrogating *Chesbro*. See *In re Adoption of G.L.V.*, 286 Kan. 1034, 1052, 190 P.3d 245 (2008) ("'When the legislature fails to modify a statute to avoid a standing judicial construction of that statute, the legislature is presumed to agree with the court's interpretation.' [Citations omitted.]").

Here, the district court found it did not have discretion to depart. This was error. The court also held it would have granted the departure if it had the discretion. Thus, St. John's sentence is vacated and remanded for resentencing.

*Did the District Court Err in Including an Oklahoma Deferred Judgment in St. John's Criminal History?*

Finally, St. John argues that the district court erred in relying on an Oklahoma deferred judgment in determining his criminal history score. He points out his PSI showed he had a criminal history score of C based on two prior Oklahoma convictions: second-degree rape, classified as a person felony, and second-degree burglary, classified as a nonperson felony. At sentencing, the court found he had a criminal history score of C and used that score to determine his sentence. But St. John claims his Oklahoma burglary conviction was a deferred judgment and should not have been included in the calculation of his criminal history score. Without the burglary conviction, his criminal history score would have been D instead of C. See K.S.A. 2017 Supp. 21-6804.

In *State v. Hankins*, 304 Kan. 226, 238-39, 372 P.3d 1124 (2016), our Supreme Court held that an Oklahoma deferred judgment is not a prior conviction under the KSGA and cannot be used to calculate a defendant's criminal history score. The *Hankins* court noted that under Kansas law, a conviction requires a judgment of guilt. But Oklahoma's deferred judgment allows courts to impose conditions without entering a judgment of guilt. If the offender completes the deferred judgment, he or she is discharged without a judgment of guilt.

The State makes no argument on whether St. John's sentence is legal or illegal. Instead, it argues that St. John has failed to provide a record establishing error. Generally, the party claiming an error occurred has the burden of designating a record showing prejudicial error. *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015). St. John did attach purported proof of his Oklahoma deferred judgment to his brief. But while an appellant's brief may contain an appendix with limited extracts from the record for the court's convenience, an appendix may not substitute for the record itself. Kansas Supreme Court Rule 6.02(b) (2019 Kan. S. Ct. R. 35).

Because the record does not show that St. John's Oklahoma burglary conviction was a deferred judgment, the State's argument has some merit. But St. John's sentence is vacated and remanded for resentencing for other reasons. Although an issue not raised below is precluded on appeal, the issue may be raised on remand. *State v. Greever*, 286 Kan. 124, 132, 183 P.3d 788 (2008). Thus, we decline to reach the merits of whether St. John's sentence is illegal on this point and allow him to raise the issue before the district court on remand.

The sentence is vacated and the matter is remanded to the district court for resentencing consistent with opinion.

Vacated and remanded.

\* \* \*

BRUNS, J., dissenting:  I respectfully dissent. Although I agree with my colleagues that we are duty bound to follow the holding in *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018), I do not believe that the holding in *Wetrich* should be extended to cases involving inherently person crimes such as rape and homicide. It is only in a world of legal fiction that a rape could possibly be deemed anything but a person crime.

It is important to note that *Wetrich* involved a comparison between the Kansas burglary statute, K.S.A. 21-3715, and the Missouri second-degree burglary statute, Mo. Rev. Stat. 569.170 (1986). In that context, the "identical or narrower" analysis made sense because crimes such as burglary can be either person or nonperson crimes depending on how they are committed. On the other hand, a rape—the penetration of another human being without consent—is by definition a person crime regardless of how or where it is committed. Thus, I would affirm.